## WISLER ET AL. *v.* HOLDERMAN.

SPECIAL FINDINGS OF JURY.—If special findings of the jury in answer to interrogatories are inconsistent with the general verdict, they control the general verdict, and judgment should be given on the special findings, and not on the general verdict.

APPEAL from the Elkhart Common Pleas.

DOWNEY, J.—This action was commenced by the appellee against the appellants. Its object was to recover on two certain promissory notes executed by the defendants to the plaintiff. The notes were given in consideration that the plaintiff would enter the military service as a substitute for Anthony Wisler, who had been drafted for one year. The notes were for five hundred dollars each. There were paragraphs in the complaint besides those based upon the promissory notes, but we need not notice them more particularly, as the verdict of the jury was upon the paragraphs setting up the notes. The defendants had paid the plaintiff two hundred dollars on the notes, in property. The ground of defence was, that the plaintiff had not been received, and did not serve as the substitute of the drafted party. The jury found for the plaintiff a general verdict, and found, also, in answer to certain questions submitted to them, as follows: "We, the jury, find for the plaintiff, and assess his damages

at one hundred dollars. That of said damages there is due the plaintiff, upon the note mentioned in the first count of his complaint, fifty dollars. And there is due the plaintiff, upon the note mentioned in his supplemental complaint, fifty dollars." The questions submitted to the jury, at the request of the plaintiff, and the answers thereto, are as follows:

"1st. Was it not the contract between the plaintiff and the defendant Anthony Wisler, that the plaintiff should be accepted, at Kendallville, as a substitute for the defendant Anthony, and should thereby procure the release of said Anthony from the draft, and in consideration therefor the defendant would pay to the plaintiff one thousand dollars, as evidenced by the two notes in suit, and defendant Anthony would pay him the further sum of ten dollars cash? Answer. No; the contract was, that the plaintiff was to be accepted as the substitute of the defendant.

"2d. Was not the plaintiff so duly accepted at Kendallville, and the defendant Anthony thereby released from the draft, in pursuance and performance of said contract? Answer. No; he, the plaintiff, was accepted at Kendallville, but rejected at Indianapolis.

"3d. Was not the plaintiff duly mustered into the service of the United States as a soldier and as a substitute of the defendant Anthony Wisler? Answer. No.

"4th. Did not the plaintiff, at all times, hold himself in readiness to serve, and subject to the orders of his superior officers as a soldier, from the time of his acceptance as a substitute of defendant Anthony, until his final discharge, about the last of May, 1865? Answer. No; the plaintiff was subject to orders as a soldier from the time he enlisted at Kendallville until his rejection at Indianapolis.

"5th. Did not the plaintiff's father have full knowledge, at the time, of his going into the army as the substitute of defendant Anthony, and consent thereto? Answer. Yes."

The interrogatories propounded to the jury, at the in-

stance of the defendants, and the answers thereto, are as follows:

"1st. Was the defendant Anthony on or about the month of October, 1864, drafted for one year's services in the army of the United States? Answer. Yes.

"2d. Did said Anthony employ the plaintiff to go as his substitute in said service, and agree to pay him therefor ten dollars cash in hand, and give him the notes in suit, with the defendant John's name thereon as surety, the notes to be delivered to plaintiff's brother, on the acceptance of the plaintiff as such substitute? Answer. Yes.

"3d. Did the plaintiff appear at Kendallville, Indiana, on or about the 4th of November, A. D. 1864, and there be examined and accepted by the board of enrolment as such substitute? Answer. Yes.

"4th. Did plaintiff, on the same day he was so examined and accepted at Kendallville, return home to Elkhart county, and afterward, having returned to Kendallville, was he there, on or about the 9th day of November, 1864, mustered as a substitute of said Anthony? Answer. Yes.

"5th. Were said notes delivered to the brother of plaintiff a day or two after his examination at Kendallville? Answer. Yes.

"6th. Was plaintiff sent forward from Kendallville to the general rendezvous at Indianapolis, after his muster at Kendallville? Answer. Yes.

"7th. Was plaintiff at Indianapolis subjected by the military authorities at Indianapolis to another examination as to his physical fitness for the service, and as the result of that examination, told that he had better go home; and was he on the same day given a paper, called or spoken of by himself and others as a discharge furlough, and sent or permitted to go out of the camp and return home? Answer. Yes.

"8th. Did he return home and remain at home, going, in the mean time, to school, or engaged in common labor for his father, or others, until about the last of May, 1865, and

then go to Indianapolis and get a discharge and other papers and return immediately home? Answer. Yes.

"9th. Was plaintiff away from home as much as twenty days in all his trips to Kendallville and Indianapolis, made in pursuance of his agreement to go as a substitute of defendant Anthony? If more than twenty days, state how many days. Answer. No; the plaintiff was away eighteen days.

"10th. Has the defendant Anthony paid plaintiff on said notes two hundred dollars in money or property as payment? If not two hundred dollars, then how much has he paid? Answer. Yes.

"11th. Was the defendant Anthony, at the time he was drafted, able-bodied and fit for service? Answer. Yes, he was so declared at Kendallville."

The defendants moved the court for judgment in their favor on the special findings, but the motion was overruled, and the court rendered judgment for the plaintiff for the amount of the verdict. The correctness of this ruling is the only question presented for our decision. If the special findings are inconsistent with the general verdict, they control the general verdict, and the court should give judgment on such special findings, and not on the general verdict. 2 G. & H. 206, sec. 337.

A majority of the court think that the action of the court was correct in rendering judgment on the general verdict. The writer is, however, of a different opinion. The general verdict was apparently a mere effort to compromise the controversy between the parties, which the jury had no right to do. As the defendants agreed to pay ten dollars in cash down, and the amount of the two notes for five hundred dollars each, and had paid only two hundred dollars of the amount, the general verdict, if for the plaintiff at all, should have been for eight hundred and ten dollars, with any interest due on the notes, and not for one hundred dollars only. But the writer is clearly of the opinion that the plaintiff was not entitled to recover at all. He was never fully accepted

as the substitute of Anthony Wisler, but, on the contrary, was rejected upon a final examination. He never performed any service for the government, which was the substantial consideration for which the notes were given. The fact that the plaintiff, at the close of the war, got a discharge, amounts to nothing. It was an unmeaning ceremony, unless its meaning was to enable him to claim pay for services which he had never rendered. The notes, it appears from the verdict of the jury, were delivered to the brother of the plaintiff after the examination at Kendallville. If it had been understood that the examination at Kendallville was final, it seems probable that the notes would have been delivered to the plaintiff himself, and not to another conditionally for him. The writer understands that the jury, by their negative answer to the first question propounded to them at the instance of the plaintiff, found that it was not the agreement that the plaintiff's acceptance at Kendallville should be final; but, on the contrary, that he should be accepted generally and finally. And by their answer to the second question asked at the instance of the plaintiff, the jury found that the plaintiff was not accepted at Kendallville, and the defendant Anthony thereby released from the draft. If it could be held that the plaintiff had some claim to be compensated for the eighteen days during which he was going back and forth or in camp, surely the two hundred dollars already paid him was a sufficient remuneration therefor.

The judgment is affirmed, with costs.

*W. A. Woods, J. D. Arnold, A. S. Blake,* and *R. M. Johnson,* for appellants.

*J. H. Baker* and *J. A. S. Mitchell,* for appellee.