THE GRAND RAPIDS AND INDIANA R. R. Co. v. BOYD.

RAILROAD.— *Common Carrier of Passengers.— Negligence.*—A passenger upon a railroad train takes all the risks attending that mode of travel, except such as are caused or increased solely by the negligence of the carrier.

SAME.—A common carrier is an insurer of the passenger's safety only against the risks caused or increased solely by its own negligence.

SAME.—*Extent of Negligence.*—The negligence for which the carrier is liable includes negligence concerning the condition of its road, the character of its machinery, the quality of its cars, the sufficiency of its equipments, the skill and conduct of its agents and employees, and every other thing necessary to the safety of a passenger who himself is not at fault.

SAME.—*Action by Passenger for Injury.—Special Finding.—Answers to Interrogatories.— Verdict.*—In an action against a railroad company, by a passenger, for injuries received through the alleged negligence of the defendant in employing an incompetent engineer and defective machinery, in suffering the road to be out of repair and in running the train recklessly, thereby wrecking the train carrying the plaintiff, the jury, with their general verdict for the plaintiff, found specially, that, at a point on the defendant's road where the ties were bad and the rails short, because of a flaw, discoverable by a practicable test, in an axle of one of the trucks of the tender, such axle broke, throwing the train on which the plaintiff was riding from the track, thereby injuring him.

*Held*, that such finding supports, but is no stronger than, the general verdict.

SAME.—*Judgment Non Obstante.*—Such jury also found specially, that, three

The Grand Rapids and Indiana R. R. Co. *v.* Boyd.

months previous to the accident, such axle had been " tested * by the best approved methods in use " and had been duly inspected just before the train left on the trip during which the accident occurred ; that the flaw could not have been detected ; that the axle had been made by a good and reputable manufacturer ; that the train, at the time of the accident, was running at a safe rate of speed ; that the road was in ordinary condition ; and that no act of negligence " in particular " had been committed by the defendant, or by any of its agents or employees " in particular."

*Held,* that the defendant was entitled to judgment notwithstanding the verdict.

From the Elkhart Circuit Court.

*A. A. Chapin,* for appellant.

*J. D. Ferrall* and *J. S. Drake,* for appellee.

BIDDLE, J.—Complaint in two paragraphs, by the appellee, against the appellant, for an alleged injury received as a passenger, through the negligence of the appellant as a common carrier. Both paragraphs are essentially the same, but, as the second is more full and complete in its averments than the first, we omit the first entirely.

The second paragraph avers, in substance, that the appellant, at and before the time of the alleged injury, was the owner of a railroad for the conveyance of passengers for hire, extending from Fort Wayne, in Allen county, Indiana, to Petoskey, in Emmet county, in the State of Michigan, and in its course passing through Lagrange, in Lagrange county, Indiana, and Grand Rapids, in the State of Michigan ; that, on the 4th day of November, 1874, the appellee, Boyd, took passage on a train of cars on said railroad, at Lagrange aforesaid, for Grand Rapids ; that the appellant, disregarding her duty in that behalf, employed a careless and incompetent engineer to run said train, and she suffered and permitted the said railroad to get out of repair, in this, that the cross-ties were rotten, and the rails thereon were insecurely fastened down and out of shape, and that the cars were not kept in a good and safe condition for the conveyance of passengers, that one

of the axles under the tender was carelessly suffered and permitted to remain for a long time in a defective and unsafe condition, and that, while said engineer was running said train of cars at a high and dangerous rate of speed, the car in which the appellee was riding was thrown from the track, by reason of the breaking of the axle under said tender, and the unsound ties and insecure fastening of the rails, and precipitated down an embankment, and that, after the breaking of said axle, and the said cars were off the track, the appellant continued to run said train of cars at an unreasonable and dangerous rate of speed, without making proper efforts to stop them; that, by reason thereof and without any negligence or carelessness on the part of the appellee, but wholly on account of the negligence and carelessness of the appellant and her employees, he was greatly and permanently injured and bruised in his back, spine and lower limbs, and in consequence thereof he was sick for a long time, and suffered great pain, and was unable to perform any labor or make any violent exertion, and that he has expended large sums of money for medical attendance and in endeavoring to be cured of his injuries so received, whereby he has been greatly damaged, for which he demands judgment.

A separate demurrer, for the alleged want of sufficient facts, was overruled to each paragraph of the complaint, and exceptions reserved. The answer was a general denial. Trial by jury, and a general verdict for the appellee.

With the verdict the jury returned answers to the interrogatories submitted by the appellee, as follows:

" 1st. Was the plaintiff injured by a train of cars being thrown from the track of the defendant's railroad, on or about the 5th of November, 1874?

"Ans. Yes.

" 2d. Was plaintiff, at the time, a passenger on defendant's cars?

"Ans. Yes.

" 3d. Did an axle in the trucks to the tender in said train break, and contribute to the injury of plaintiff ?

"Ans. Yes.

" 4th. Was there a flaw or defect in said axle, before the accident ?

"Ans. Yes.

" 5th. Could said flaw or defect have been discovered by any practicable test ?

"Ans. Yes.

" 6th. Is there such an appliance known as a safety beam, iron or stirrup, and used on the trucks of cars and tenders ?

" Ans. Yes.

" 7th. For how long was said appliance known to defendant, prior to the 5th of November, 1874 ?

"Ans. About 4 years.

" 8th. Is the use of the safety beam or iron designed to, and will it tend to, prevent accidents to broken axles, broken in the manner of the one in question in this case ?

"Ans. It might be possible.

" 9th. Was the train running at a high and dangerous rate of speed at the time of the accident ?

"Ans. No.

" 10th. At what rate of speed was the train running at the time of the accident ?

"Ans. About thirty miles per hour.

" 11th. Were the defendants or her agents negligent in the management of said train ?

"Ans. No.

" 12th. What agent was negligent or careless in the management of said train ?

"Ans. None.

" 13th. Was said railroad track, at the place of accident, in good order and repair ?

" Ans. Ordinarily.

"14th. If said track was not in good repair, state in what way and manner it was not in good order and repair.

"Ans. Bad ties and short rails."

The jury also returned answers to interrogatories submitted by the appellant, as follows :

" 1st. Where did the accident occur, by which plaintiff claims to have been injured ?

"Ans. Near county line, between Kent and Allegan counties, in Michigan.

" 2d. Was not the accident caused by the breaking of an axle of the tender of the engine of the train upon which the plaintiff was riding?

"Ans. Yes, it was.

" 3d. Was there any defect in said axles ?

"Ans. Yes, there was.

" 4th. If there were any defect in the axle, state what it was.

"Ans. It was a flaw.

" 5th. Was not said axle, in the month of August prior to the accident, tested under the supervision of James M. Boon, by the best approved methods in use ?

"Ans. Yes, it was.

" 6th. If said axle was tested, and in the manner named in the preceding question, was any defect discovered ?

"Ans. None.

" 7th. Was not the said engine and tender inspected at Fort Wayne, before the train left on the trip in which the accident occurred?

"Ans. Yes.

" 8th. If there were any flaw in said axle, could it have been detected by a careful inspection before the train left Fort Wayne on that trip ?

"Ans. It might not at that time.

" 9th. Was not said axle made by a good and reputable manufacturer ?

"Ans. Yes, it was.

" 10th. Did said axle receive any unusual strain before it broke, and, if so, when and where did it receive it ?

"Ans. No unusual strain proven.

" 11th. At what rate of speed per hour was the train running at the time of the accident?

"Ans. Thirty miles.

" 12th. Was the engineer running the train at an unusual rate of speed, at the time of the accident?

"Ans. No.

" 13th. Was not thirty miles an hour a safe rate of speed on the road at the place where the accident occurred, as shown by the evidence ?

" Ans. Yes, it was.

" 14th. Was not said road in good condition, at the place where the axle broke?

" Ans. Ordinary condition.

" 15th. What agent or employee of the defendant committed any act of negligence or unskilfulness, or omitted to perform any duty, that caused the alleged injury ?

" Ans. No one in particular.

" 16th. What act or acts of negligence, if any, on the part of said defendant or its agents, contributed to the injury complained of by plaintiff?

" Ans. None in particular.

" 17th. At what time and place did any act of negligence or misconduct of defendant or her agents occur, that caused the alleged injury to take place ?

" Ans. Previous to and near the place of accident.

" 18th. If you find that said railroad track was in bad condition or repair, at place of accident, state fully wherein it was in bad condition or repair.

" Ans. Bad ties and short rails.

" 19th. Would a safety stirrup have prevented this accident?

" Ans. It would not.

" 20th. If there was any flaw in the axle, did it come to the surface?

" Ans. It did not come to the surface.

" 21st. Does the evidence show that the hydrostatic press had ever been used, prior to this accident, to test axles before being used?

" Ans. No.

" 22d. Does not the evidence adduced in this show that the hydrostatic press was not known as a practical test for axles prior to the accident?

" Ans. It does.

" 23d. If the hydrostatic press had been used as a test prior to this accident, by whom had it been used?

" Ans. Don't know of its being in use."

A motion for a new trial was made and overruled, and exceptions reserved. Motion by appellant, to require the jury to answer certain special interrogatories more specifically, overruled, and exceptions; motion for judgment on the special finding in favor of appellant, notwithstanding the general verdict, overruled; exceptions; judgment on the general verdict; appeal.

The errors assigned in this court are:

1. Overruling the demurrer to the complaint;

2. Overruling the motion for a new trial; and,

3. Overruling the motion for judgment on the special findings.

The complaint seems to us to be well drawn, and to contain all the necessary averments. It is so clearly sufficient that we do not further examine the question. Indeed, this question is essentially waived in the brief of the counsel.

Did the court err in refusing to render judgment in favor of the appellant, on the special finding of facts, notwith-

standing the general verdict? This, we believe, is the controlling question in the case.

When the special finding of the facts is inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly. This is settled law and needs no discussion. 2 R. S. 1876, p. 172, sec. 337; *Fromm* v. *Leonard*, 21 Ind. 243; *Amidon* v. *Gaff*, 24 Ind. 128; *The Bellefontaine R. W. Co.* v. *Hunter*, 33 Ind. 335; *Snyder* v. *Robinson*, 35 Ind. 311; *Campbell* v. *Dutch*, 36 Ind. 504; *Wisler* v. *Holderman*, 40 Ind. 106; *Stockton* v. *Stockton*, 40 Ind. 225; *Ridgeway* v. *Dearinger*, 42 Ind. 157; *Skillen* v. *Jones*, 44 Ind. 136; *Shanks* v. *Albert*, 47 Ind. 461; *Adams* v. *Cosby*, 48 Ind. 153; *Nebeker* v. *Cutsinger*, 48 Ind. 436; *The Indianapolis & St. Louis R. R. Co.* v. *Stout*, 53 Ind. 143; *Alexander* v. *The North-Western Christian University*, 57 Ind. 466.

A railroad company, that is a common carrier of passengers, is not liable to the passenger it carries, except for negligence in the carrying, whereby the passenger, without his own fault, is injured. The passenger takes all the risks of travel, according to the mode by which he travels, except such as are caused or increased by the negligence of the carrier, without the fault of the passenger. A common carrier of passengers is not an insurer of the passenger's safety against all the accidents and vicissitudes of travel, but is an insurer against all risks caused or increased by the negligence of the carrier, where the passenger is not at fault. The negligence of a common carrier in carrying the passenger includes his negligence in all the departments of his undertaking; the condition of the road, the character of the machinery, the quality of the cars, the sufficiency of the equipments, the skill and conduct of the agents and employees; in every thing, indeed, necessary to the safety of the passenger, when he is not himself at fault.

The following authorities will support these proposi-

tions:  *The Indianapolis, Bloomington and Western R. W. Co.* v. *Beaver,* 41 Ind. 493;  *The St. Louis and South-Eastern R. W. Co.* v. *Valirius,* 56 Ind. 511;  *The Ohio and Mississippi R. W. Co.* v. *Dickerson,* 59 Ind. 317;  *Hegeman* v. *The Western R. R. Corporation,* 13 N. Y. 1;  *Frink* v. *Coe,* 4 Greene, Iowa, 555;  *McElroy* v. *The Nashua and Lowell R. R. Corporation,* 4 Cush. 400;  *The Philadelphia and Reading R. R. Co.* v. *Derby,* 14 How. 468;  *Taylor* v. *The Grand Trunk R. W. Co.,* 48 N. H. 304;  *New Jersey R. R. Co.* v. *Kennard,* 21 Pa. State, 203;  *Meier* v. *The Pennsylvania R. R. Co.,* 64 Pa. State, 225;  *Feital* v. *Middlesex R. R. Co.,* 109 Mass. 398;  *Galena and Chicago R. R. Co.* v. *Yarwood,* 15 Ill. 468;  *Frink* v. *Potter,* 17 Ill. 406.

It remains to apply the law, as above expressed, to the averments in the complaint, the general verdict, and the special finding of facts in the case before us upon the question presented.

Upon the special questions numbered 1, 2, 3, 4, 5 and 14, submitted to the jury by the appellee, and questions 2, 3, 4, 17 and 18, submitted to the jury by the appellant, with their answers, the following special facts are found by the jury:  That the appellee was a passenger on the appellant's railroad;  that he was injured by the train of cars being thrown from the track;  that an axle in the trucks of the tender in said train broke;  that the breaking of the axle contributed to the injury of the plaintiff;  that there was a flaw or defect in the axle, before the accident occurred;  that the flaw or defect could have been discovered by a practicable test;  that the track of the road was not in good repair, on account of bad ties and short rails;  that the accident was caused by the breaking of the axle having the defect;  and that the acts of negligence, which caused the alleged injury, took place previous to and near the place of the accident.

The Grand Rapids and Indiana R. R. Co. v. Boyd.

These facts are favorable to the appellee, but they are no stronger in his favor than the general verdict, nor is the general verdict any stronger in his favor on account of the facts so specially found. They all fall within the general verdict.

Upon the special questions numbered 5, 6, 7, 8, 9, 10, 12, 13, 14, 15 and 16, submitted to the jury by the appellant, and questions 11 and 12, submitted to the jury by the appellee, with their answers, the following facts are found by the jury: That the axle, in the month of August prior to the accident, which occurred in November, was tested by the best approved methods in use, and no defect in it discovered ; that the engine and tender were inspected at Fort Wayne, before the train left on the trip in which the accident occurred; that any flaw in the axle might not have been detected by such inspection at that time; that the axle was made by a good and reputable manufacturer; that it received no unusual strain before it broke; that the train was not running at an unusual rate of speed, but at a safe rate, at the time the accident occurred; that the road was in ordinary, good condition, that no agent or employee of the appellants, "in particular," committed any act of negligence or unskilfulness, or omitted to perform any duty that caused the alleged injury; that no act of negligence, "in particular," on the part of the appellant or its agents, contributed to the injury complained of; that neither the appellant nor its agents were negligent or careless in the management of the train.

All the facts stated in the special finding must be taken and construed together, to ascertain their true legal effect, and when so taken and construed together, if they are inconsistent with the general verdict, they must be held to control it; yet, if they can be reconciled, by any fair hypothesis or construction, with the general verdict, it

ought to stand. It seems to us impossible, in this case, to reconcile the facts stated in the special finding, with the general verdict. By the general verdict the appellee is entitled to recover; and by the facts stated in the special finding the appellant is entitled to recover. They can not be reconciled. The facts stated in the special finding negative all negligence on the part of the appellant, and, if without negligence, the appellant can not be held liable, although the appellee has been injured by the accident. In this condition of the case we are of opinion that the appellant is entitled to judgment in its favor, on the facts stated in the special finding, notwithstanding the general verdict.

The judgment is reversed, at the costs of the appellee, and the cause is ·remanded, with instructions to the court below to render judgment in favor of the appellant, on the facts stated in the special finding, notwithstanding the general verdict.