The Lake Shore and Michigan Southern R. W. Co. v. McCormick.

———————•••———————

No. 7038.

THE LAKE SHORE AND MICHIGAN SOUTHERN R. W. Co.
v. McCORMICK.

SPECIAL FINDING.—*Practice.— Verdict.*—Where the special finding of the facts is inconsistent with the general verdict, the former will control the latter, and the court must give judgment accordingly.

NEGLIGENCE.—*Employer and Employee.—Agreement as to Risks.*—An employee, when he enters the service of an employer, impliedly agrees to assume all risks ordinarily and naturally incident to the particular service; and the employer impliedly agrees that he will not subject the employee, through fraud, negligence or malice, to greater risks than those which fairly and properly belong to the particular service in which the employee is to be engaged.

SAME.—*Obligation of Employer to Employee.*- The employer's obligation is not to supply the employee with absolutely safe machinery, or with any particular kind of machinery, but to use ordinary and reasonable care not to subject the employee to extraordinary or unreasonable danger.

SAME.—*Master and Servant.— Correlative Duties.— Machinery Used.—Injury to Servant.*—When a master employs a servant to do a particular kind of work with particular kind of implements and machinery, the master does not agree that they are free from danger in their use, but that they are sound and fit for the purpose intended, so far as ordinary care and prudence can discover, and that he will use ordinary care and

| | |
|---|---|
| 74 | 440 |
| 124 | 327 |
| 124 | 380 |
| 74 | 440 |
| 129 | 331 |
| 74 | 440 |
| 130 | 174 |
| 130 | 349 |
| 74 | 440 |
| 132 | 342 |
| 74 | 440 |
| 136 | 467 |
| 74 | 440 |
| 139 | 685 |
| 74 | 440 |
| 140 | 652 |
| 74 | 440 |
| 144 | 692 |
| 146 | 567 |
| 74 | 440 |
| 152 | 400 |
| 152 | 403 |
| 74 | 440 |
| f169 | 38 |

prudence in keeping them in such condition and fitness; and the servant agrees that he will use such implements and machinery with care and prudence; and if, under such conditions and circumstances, harm or injury come to the servant in the use of such machinery, it must be ranked among the accidents, the risk of which the servant must be deemed to have assumed when he entered into such service.

SAME.—*Improved Machinery.*—*Case Criticised.*—Neither companies nor individuals are bound, as between themselves and their servants, to discard and throw away their implements or machinery upon the discovery of every new invention which may be thought or claimed to be better than those they have in use; but, if they take ordinary care and exercise ordinary prudence to keep their implements or machinery in sound repair, so that harm does not result to the servant for want of such sound condition of the implements or machinery used, then such individuals or companies will not be responsible to servants for injuries which may occur to them in the use of such implements or machinery. *The St. Louis, etc., R. W. Co.* v. *Valirius*, 56 Ind. 511, criticised.

SAME.—*Railroad Company.*—*Injury to Employee.*—*Brakeman.*—*Special Finding.*—In an action against a railroad company by a brakeman for an injury received while engaged in coupling cars, by his foot being caught in a dangerously constructed frog at a switch on the line of the road, the jury found specially that the switches and frogs of the road were in the same condition during all the time the plaintiff was in the employ of the defendant, and that they were of the same kind as those used on the principal railroads in the country; that plaintiff had full opportunity to acquire a knowledge of the condition of all the switches and frogs in the road; that he did not use any care to ascertain the condition of the frogs and switches at the place where the injury occurred; that while walking on the track behind a moving car, his foot was caught in one of the frogs; that the printed rules of the company forbid brakemen to go between the cars in motion to couple them, and forbid coupling by hand in all cases where a stick could be used; that, in consideration of employment by defendant, the plaintiff agreed to obey said rules; that, under the circumstances, the plaintiff used proper care to avoid injury to himself.

*Held*, that the defendant was not liable.

From the Laporte Circuit Court.

*J. B. Niles* and *J. I. Best*, for appellant.

*S. L. Trippe*, for appellee.

SCOTT, J.—McCormick sued the Lake Shore and Michigan Southern Railway Company for damages resulting from an injury received by him at South Bend, on the 4th day of

October, 1876, while engaged as a brakeman on the appellant's railroad. He alleged in his complaint that, while engaged in coupling cars, he was, without fault on his part, caught in a dangerously constructed frog, which, without proper safeguards and necessary protection, was negligently allowed to remain in the track of the company's road at South Bend; that the appellant had carelessly and negligently constructed and suffered said frog to be and remain wholly without any mechanical contrivances, wooden block protections and safeguards, which could and would have rendered the same safe. The appellee further alleged that he was wholly ignorant of the condition and situation of the road at the point where he was hurt, and that he had no knowledge of such switch and frog and their unprotected condition and the absence of safeguards at that point, and had no means or opportunity of acquiring any knowledge in relation thereto. Issue was formed, and a trial by jury resulted in a general verdict for the appellee in the sum of $5,000. The jury also returned answers to special interrogatories. The interrogatories and the answers thereto are as follows:

"1st. Were the frogs and switches on the defendant's road between Elkhart and Chicago, and at Chicago, substantially of the same character and in the same condition continuously from the 8th day of April, 1875, to the 4th day of October, 1876? Answer. Yes.

"2d. Had the frog at South Bend, in which the plaintiff's foot was caught, at the time of the alleged injury to him complained of in this case, been during all that time in substantially the same condition as when the injury occurred? Ans. Yes.

"3d. Was not that frog, and were not all the frogs and switches on said part of the defendant's road, open to view and plain to be seen by any persons inclined to look at them during all that time? Answer. Yes.

"4th. Could any person, during all that time, looking carefully at the frogs and switches in said part of said road, including those at South Bend, plainly see and acquire full knowledge of their condition? Ans. He could, as to outward appearances.

"5th. Is it not dangerous for a person to walk on the track, among such frogs and switches, behind a moving car, without taking any notice of the frogs or switches over which he is passing? Ans. No.

"6th. Was it consistent with ordinary care and prudence, for a man to walk in front of a moving car over a frog such as that in which the plaintiff's foot was caught, without looking at or taking any notice of the frog or track over which he was walking? Ans. No.

"7th. Was the plaintiff walking on the track, behind a moving car, when the injury complained of occurred? Ans. Yes.

"8th. Could the plaintiff, between the 8th day of April, 1875, and the 4th day of October, 1876, (passing, as he did, back and forth over the road,) by the careful use of his eyesight, have ascertained the character and condition of said frogs and switches, had he tried to do it? Ans. No.

"9th. Had the plaintiff the means, during said period of time, of becoming acquainted with the fact that there were such frogs and switches at the station at South Bend, and at or near the point where he was injured in coupling cars, when the accident complained of occurred, and could he have informed himself of that fact by the careful use of his faculties? Ans. Yes.

"10th. Did not the company, during the time when the plaintiff was in its employ, have printed rules, which forbid brakemen to get between cars in motion to couple them, and all similar imprudences, which forbid coupling by hand in all cases when a stick could be used to guide the link or shackle, and enjoin upon them in all cases to take time to do their duty in safety? Ans. Yes.

"10½. Did not the plaintiff, at the time of his employment by the defendant in April, 1875, in consideration of such employment, agree with the defendant that he would obey said rules? Ans. Yes.

"11th. Did the plaintiff, during the time he was in the employ of the defendant, make any effort or use any care to ascertain the condition of the frogs and switches on the part of the defendant's road over which his employment extended, or of those at South Bend? Ans. No.

"12th. Were the frogs and switches on the defendant's road, at the time of the accident to the plaintiff, substantially of the same form and in similar condition as those generally used on the principal railroads of the United States? Ans. Yes.

"13th. Did the plaintiff, in making the coupling when the accident complained of occurred, use proper care to avoid injury to himself? Ans. Yes, under the circumstances."

The appellant moved the court for a judgment in its favor on these special findings, which motion was by the court overruled, and to this ruling the appellant excepted. A motion for a new trial was made, and overruled by the court, and the appellant excepted to this ruling of the court. The correctness or incorrectness of these rulings is presented for the consideration and opinion of this court by the assignment of errors.

It is the settled law of this State, that when the special finding of the facts is inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly. The Grand Rapids, etc., R. R. Co. v. Boyd, 65 Ind. 526, and authorities there cited.

A judicial judgment is formed like any other judgment of the human mind, and is simply a conclusion from certain premises. The law being the first or major premise, the facts being the second or minor premise; the conclusion from these premises constitutes every legal or judicial judgment.

We regard the following propositions as sound in principle, and sustained by the weight of authority :

The servant, when he enters into the service of an employer, impliedly agrees that he will assume all risks which are ordinarily and naturally incident to the particular service ; and the master or employer impliedly agrees that he will not subject his servant, through fraud, negligence or malice, to greater risks than those which fairly and properly belong to the particular service in which the servant is to be engaged.

The master's obligation is not to supply the servant with absolutely safe machinery, or with any particular kind of machinery ; but his obligation is to use ordinary and reasonable care not to subject the servant to extraordinary or unreasonable danger.

When a master employs a servant to do a particular kind of work, with particular kind of implements and machinery, the master does not agree that the implements and machinery are free from danger in their use, but he agrees that such implements and machinery, to be used by such servant, are sound and fit for the purpose intended, so far as ordinary care and prudence can discover, and that he will use ordinary care and prudence in keeping them in such condition and fitness ; and the servant agrees that he will use such implements and machinery with care and prudence ; and if, under such conditions and circumstances, harm or injury come to the servant, it must be ranked among the accidents, the risk of which the servant must be deemed to have assumed when he entered into such service.

In the case of *The St. Louis, etc., R. W. Co.* v. *Valirius*, 56 Ind. 511, this court sanctioned the following instruction : "It is negligence to use cars dangerous in their construction, when there are others to be secured which are not dangerous ; and railroad companies are bound to procure the best, otherwise they must be held responsible." The latter sentence

of this instruction, if taken literally and in its broadest sense and unconnected with the former sentence, we think would go too far. Neither companies nor individuals are bound, as between themselves and their servants, to discard and throw away their implements or machinery upon the discovery of every new invention which may be thought or claimed to be better than those they have in use; but if they take ordinary care and exercise ordinary prudence to keep their implements or machinery in sound repair, so that harm does not result to the servant for want of such sound condition of the implements or machinery used, then such individuals or companies will not be responsible to servants for any injury which may occur to them in the use of such implements or machinery. *Walsh* v. *The Peet Valve Co.*, 110 Mass. 23; *Cayzer* v. *Taylor*, 10 Gray, 274; *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572; *The Schooner "Norway"* v. *Jensen*, 52 Ill. 373; *Hayden* v. *Smithville Manufacturing Co.*, 29 Conn. 548; *Morris* v. *Gleason*, 1 Bradwell, 510; *The Indianapolis, etc., R. R. Co.* v. *Love*, 10 Ind. 554; *The Ohio, etc., R. R. Co.* v. *Hammersley*, 28 Ind. 371; *McGatrick* v. *Wason*, 4 Ohio St. 566; *Sullivan's Adm'r* v. *Louisville Bridge Co.*, 9 Bush, 81–89; *Nolan* v. *Shickle*, 3 Mo. App. 300; *Cummings* v. *Collins*, 61 Mo. 520; *International, etc., R. R. Co.* v. *Doyle*, 49 Tex. 190; *Houston, etc., R. W. Co.* v. *Oram*, 49 Tex. 341; *Ogden* v. *Rummens*, 3 Fost. & F. 751; *Williams* v. *Clough*, 3 H. & N. 258; *Seymour* v. *Maddox*, 16 Q. B. 326; *Priestley* v. *Fowler*, 3 M. & W. 1; *Perry* v. *Marsh*, 25 Ala. 659; *Ormond* v. *Holland*, Ellis, B. & E. 102; *Gibson* v. *Erie R. W. Co.*, 63 N. Y. 449; *Wonder* v. *Baltimore, etc., R. R. Co.*, 32 Md. 411; *Summersell* v. *Fish*, 117 Mass. 312; *Tinney* v. *The Boston, etc., R. R. Co.*, 62 Barb. 218, and 52 N. Y. 632; *Columbus, etc., R. W. Co.* v. *Arnold*, 31 Ind. 174; *Malone* v. *Western Transportation Co.*, 5 Biss. 315; *Kielley* v. *Belcher, etc., Mining Co.*, 3 Sawyer, 437; *Warner* v. *The Erie R. W. Co.*, 39 N.

Y. 468, and 49 Barb. 558 ; Wharton Law of Negligence, secs. 213 and 244, and the authorities there cited.

The following are the facts found specially by the jury as embodied in the foregoing interrogatories, and the answers thereto :

The appellant owned a railroad ; the appellee was employed as a brakeman on the road ; that on the road there were certain switches and frogs ; that these switches and frogs were in the same condition during all the time the appellee was in the employ of appellant ; that these switches and frogs were of the same kind as those used on the principal railroads in the United States ; that these frogs were plain to be seen by any person inclined to look at them ; that the appellee had full opportunity to acquire a knowledge of the condition of all the switches and frogs in the appellant's road, including the one at South Bend ; that the appellee, during the time he was in the employ of the appellant, made no effort, nor did he use any care, to ascertain the condition of the frogs and switches at the place where the injury to him occurred ; that the appellee was walking on the track of the railroad behind a moving car, when his foot was caught in one of these frogs, and was injured while coupling cars ; that the company had printed rules, while the appellee was in its employ, which forbid brakemen to get between cars in motion to couple them ; which forbid coupling by hand in all cases, when a stick could be used to guide the link ; and said rules enjoined upon them, in all cases, to take time to do their duty in safety ; that the appellee, in consideration of his employment by the appellant, agreed to obey said rules ; that appellee, under the circumstances, used proper care to avoid injury to himself.

From the law as we have stated it in the foregoing propositions, and from the special finding of facts by the jury, as herein set out, we are forced to the conclusion, as a logical and legal sequence, that the appellant was not guilty of such

negligence as made it liable to the appellee for the injury so received by him; but that the injury to the appellee was the result, rather, of an accident, the risk of which the appellee must be deemed to have taken upon himself when he entered into the service of the appellant.

The special finding of facts, in our opinion, is inconsistent with the general verdict, and in view of the well settled law, above referred to, the motion of the appellant for judgment in its favor on the special finding should have been sustained.

The judgment is reversed, and cause remanded with instructions to the circuit court to sustain the appellant's motion for a judgment on the special finding, and to enter judgment accordingly.

Opinion filed at the November term, 1880.
Petition for a rehearing overruled at the May term, 1881.