The Brazil Block Coal Company v. Hoodlet.

No. 14,793.

# THE BRAZIL BLOCK COAL COMPANY v. HOODLET.

NEGLIGENCE.—*Needless Exposure to Danger.*—One who needlessly and reck-lessly exposes himself to open and obvious danger is guilty of negli-gence. If he thereby suffers injury he is guilty of such negligence as will preclude a recovery against the persons causing such injury.

MASTER AND SERVANT.—*Risks Assumed by Employee.*—*Hazardous Employ-ment.*—A servant assumes all the ordinary and usual risks of the busi-ness upon which he enters, so far as these risks are known to him, or could be readily discernible by a person of his age and capacity, in the exercise of ordinary care. This is true even though the duties of the service may be from their nature necessarily hazardous.

SAME.—*Knowledge of Defect.*—*Continuance in Service.*—*Master's Promise to Repair.*—An employee who voluntarily continues in the master's service after notice of defects in tools, machinery, or other appliances which augment the danger of his service, thereby assumes the risk as in-creased by the defect, unless the master expressly or impliedly prom-ises to remedy the defect.

SAME.—*Character of Risks Assumed by Employee*—The risks thus impliedly assumed by the employee are the usual risks fairly incident to his service, whether that service is rendered specially hazardous by the use of defective appliances or not. He does not necessarily assume all the risks incident to the business carried on by the employer, but only such as are connected with, and incidental to, his employment.

SAME.—*Risk not Contemplated in Employment.*—*Employee Acting under Orders. —To What Extent Protected.*—Where a master orders a servant to do something which involves encountering a risk not contemplated in his employment, although the risk is equally open to the observation of both, it does not necessarily follow that the servant either assumes the increased risk, or is negligent in obeying the order. If the apparent risk is such that a man of ordinary prudence would not take the risk, the servant acts at his peril. But unless the apparent danger is such as to deter a man of ordinary prudence from encountering it, the servant will not be compelled to abandon the service, or assume all additional risk, but may obey the order, using care in proportion to the risk apparently assumed, and if he is injured the master must re-spond in damages. For risk which plaintiff did not assume by reason of his employment, see opinion.

SPECIAL VERDICT.—*What it Should Contain.*—*Failure to Find upon Material Fact.*—*Effect of.*—A special verdict should contain a finding by the jury upon every material fact in issue necessary to constitute the plaintiff's cause of action or the defendant's defence upon which there is evidence.

| | |
|---|---|
| 129 | 327 |
| 129 | 271 |
| 129 | 327 |
| 130 | 247 |
| 129 | 327 |
| 131 | 532 |
| 132 | 342 |
| 133 | 241 |
| 129 | 327 |
| 134 | 99 |
| 135 | 366 |
| 129 | 327 |
| 137 | 210 |
| 139 | 364 |
| 139 | 611 |
| 129 | 327 |
| 140 | 525 |
| 142 | 223 |
| 143 | 386 |
| 129 | 327 |
| 145 | 558 |
| 146 | 464 |
| 129 | 327 |
| 149 | 290 |
| 152 | 25 |
| 152 | 551 |
| 152 | 596 |
| 129 | 327 |
| 161 | 681 |
| 129 | 327 |
| 165 | 111 |
| 129 | 327 |
| f166 | 277 |
| 168 | 264 |
| 129 | 327 |
| 170 | 33 |
| 170 | 35 |

There need be no finding upon immaterial facts, nor upon facts presumed but not within the issues. A failure to find upon any material fact in issue is equivalent to a finding against the party upon whom the burden rests to establish such fact.

SAME.—*Failure to Find upon Material Fact.—Remedy for.—Motion for New Trial.*—If the special verdict fails to find material facts, within the issues, which were established by the evidence, the remedy is not by motion to coerce the jury into making such finding, but by a motion for a new trial by the party aggrieved.

From the Clay Circuit Court.

*G. A. Knight* and *A. W. Knight*, for appellant.

*D. E. Williamson* and *J. A. McNutt*, for appellee.

McBRIDE, J.—This was a suit by the appellee to recover of appellant damages for personal injuries alleged to have been sustained by falling into a coal shaft.

Aside from prefatory averments, the description of the character and extent of the injuries sustained, and the prayer, the complaint is as follows :

" That, on the 4th day of January, 1888, and for a long time prior thereto, said defendant was in possession of and controlled and operated a certain coal mine in said county of Clay, and employed and operated a large number of employees and laborers, to wit, one hundred men ; that the mine of said company was entered by a shaft or opening of about 100 feet in depth ; that at the aforesaid date the plaintiff, being in the employment of said defendant as a blacksmith, his principal business being to shoe the mules and horses connected with the mining business of said company, to sharpen coal picks and other tools of the miners, as well as other work when required by said defendant ; that on said date, the pump in said mine being out of repair, the plaintiff was ordered by the defendant to enter said shaft and go to the bottom of said mine or shaft, 96 feet, and make repairs on said pump ; that in pursuance of such orders so given by said bank boss, he did enter said shaft and descend the same to the bottom, and when said repairs had been made and fin-

ished, the said plaintiff was directed and ordered by the engineer in charge of the machinery and said pump to take the tools and packing used in said repairs to the engine-house on said premises of said defendant, and as was otherwise his duty to do; and he avers that in coming out of said shaft and reaching the surface of the ground at the top of the shaft, he proceeded by the usual way from the top of shaft to the tool-house for the purpose of returning the tools and packing used in the repairs of said pump; that the usual and ordinary way was along and by said shaft to the engine-house, and that in passing around the mouth of said shaft, using all necessary care and prudence, and without any fault or negligence on his part, accidentally and without negligence slipped and fell into the mouth of said shaft and to the bottom thereof, 96 feet; and that plaintiff, without negligence on his part, so fell into said shaft, and to the bottom thereof by reason of the negligence and fault of the defendant failing and neglecting to fence off and to keep enclosed the top of said shaft and the entrance thereof by vertical, flat or other gates or protection, covering and protecting the mouth of said shaft as required by law, but with full knowledge of the fact of such omissions negligently and carelessly permitted the mouth of said shaft to remain open and exposed, well knowing the dangers to its employees compelled to work therein and around and about said shaft; that at the time and place aforesaid, when and where said plaintiff fell into said shaft, he was using all the care that he possibly could passing thereby."

The first two errors assigned question the sufficiency of the complaint.

We can probably best state the objections urged to the complaint by quoting from appellant's brief. Appellant's counsel say:

" We insist, first, that this complaint shows that the danger to which appellee was exposed, namely, the unprotected mouth of the shaft, was an open and obvious one; that ap-

pellee knew as well as appellant that it was not protected; that the fact was discoverable by him by the use of his eyes; that he could not avoid knowing it, and is conclusively presumed to know, what he might and could have observed by the use of his senses ; he nowhere in his complaint avers his ignorance of the unprotected mouth of the shaft about which he was working, or that he complained of it; or that the appellant induced him to continue at work under a promise to fix it, and that appellee's complaint shows that this was a known danger which he voluntarily encountered ; that it was one of the risks he voluntarily assumed under his employment, and was as well known to him as to appellant, and that, therefore, he is not entitled to recover."

They also insist that the specific averments of the complaint, tending to show that appellee was guilty of contributory negligence, are sufficient to control the general averment that the appellee was without fault.

It is too plain for controversy that one who needlessly and recklessly exposes himself to open and obvious danger is guilty of negligence. If he thereby suffers injury, he is guilty of such negligence as will preclude a recovery against the person causing such injury.

The law requires that men shall use the senses with which nature has endowed them, and when, without excuse, one fails to do so, and is injured in consequence, he alone must suffer the consequences. *Lake Shore, etc., R. W. Co.* v. *Pinchin,* 112 Ind. 592 ; *City of Plymouth* v. *Milner,* 117 Ind. 324.

We can not agree with appellant's counsel that such a state of facts is shown by the complaint in this case.

A much more difficult question is presented by the claim that the injury was a consequence of one of the risks which the appellee assumed under his employment.

At the time appellee received the injury the following statute was in force, and had been for several years:

" The owner or agent of every coal-mine shaft or slope, at the end of six months from the time this act takes effect,

shall keep the top of every such shaft or slope, and the entrance thereof, securely fenced off by vertical or flat gates covering and protecting the mouth of such shaft or slope. The entrance of an abandoned shaft or slope shall be securely fenced off, so that no injury can arise therefrom. The owner or agent, or either of them, violating the provisions of this section shall be fined in any sum not exceeding one hundred dollars for each day or part of a day the same is violated." Section 5468, R. S. 1881. The complaint charges that the appellant had failed to comply with this law, and had negligently left the mouth of the shaft in question open and exposed, and that it was by reason of such alleged violation of law he was injured.

The law is well settled that a servant assumes all the ordinary and usual risks of the business upon which he enters, so far as these risks are known to him, or could be readily discernible by a person of his age and capacity, in the exercise of ordinary care. Shearman and Redfield Negl., section 185 ; Cooley Torts, marginal page 541, and cases cited by both authors ; *Louisville, etc., R. W. Co.* v. *Frawley,* 110 Ind. 18; *Atlas Engine Works* v. *Randall,* 100 Ind. 293 (50 Am. Rep. 798) ; *Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. 151.

This is true, even though the duties of the service may be from their nature necessarily hazardous. It is assumed that the servant, when he engages in the employment, does so in view of all the incidental hazards, and that he and his employer, when making their negotiations, fixing the terms and agreeing upon the compensation that shall be paid to him, must have contemplated these as having an important bearing on their stipulations.

As the servant then knows that he will be exposed to the incidental risk, he must be supposed to have contracted that, as between himself and the master, he would run this risk. Cooley Torts, *supra ; Hutchinson* v. *York, etc., R. W. Co.,* 5 Exch. 343 (351).

It is also settled law that, notwithstanding the continuing duty resting upon the master to provide for his employees suitable and safe places and appliances for their work, the employee who voluntarily continues in the master's service after notice of defects in tools, machinery, or other appliances which augment the danger of his service, thereby assumes the risk as increased by the defect, unless the master expressly or impliedly promises to remedy the defect. *Indianapolis, etc., R. W. Co.* v. *Watson,* 114 Ind. 20, and authorities there cited.

This rule, while in some respects a harsh one, and subject to much abuse, is within proper limits wise, and is justified by sound public policy. As a rule employers can only learn of defects in appliances furnished through the vigilance and faithfulness of their employees.

The personal interest and sense of personal responsibility which this rule casts upon the employee must certainly tend to insure better and safer service. It is also a matter in which the public are interested. As is said by Judge Cooley : " In many employments the public are compelled to rely upon the caution and diligence of servants as the chief protection against accidents which may prove destructive of life or limb ; and any rule of law which would give the servant a remedy against the master for any injury resulting to himself from such an accident, instead of compelling him to rely for his protection upon his own vigilance, must necessarily tend in the direction of the abatement of his vigilance, and in the same degree to increase the hazards to others." Cooley Torts, marginal page 542.

While, as above stated, we regard the rule within proper limits as a wise and just one, we are not disposed to enlarge it ; on the contrary, as it is asserted in some of the cases, it should be restricted. The rule as laid down in many cases omits the limitation growing out of the express or implied promise of the master to repair. This we can not approve. Again, in some of the cases it is said that when the defect or

injurious contrivance is equally known to, or alike open to the observation of, both employer and employee, both are upon common ground, and the employer is not liable for resulting injury. *Louisville, etc., R. W. Co.* v. *Frawley, supra; Griffin* v. *Ohio, etc., R. W. Co.*, 124 Ind. 326.

If this rule is to be interpreted as broadly as its terms would seem to indicate, we can not follow it. As applied to the facts in the cases then before the court it was probably correct, but it is not true that in all such cases employer and employee are upon common ground. Nor is it the law that in all cases when an employee continues in service, knowing that some of the appliances used in the business are defective, he assumes all the risk.

When a servant enters upon an employment which he knows is hazardous, either by reason of the nature of the employment, or because of defective or otherwise dangerous appliances, he may well be said to assume this risk. Knowing when he solicits and accepts the employment that if it is given him he must use defective tools, he contracts to take that as one of the risks of the service. Whether anything is said of the dangerous character of the employment, or of the defective and dangerous appliances or not, if the dangers and defects are of such character that they are equally known to or open to the observation of both employer and employee, it can well and justly be said they stand on a common footing. Acceptance of the employment is an acceptance of the attendant risk.

The risks thus impliedly assumed by the employee are the usual risks fairly incident to his service, whether that service is rendered specially hazardous by the use of defective appliances or not. He does not necessarily assume all the risks incident to the business carried on by the employer, but only such as are connected with, and incidental to, his employment. There may be many risks connected with or growing out of the business carried on by the employer which the employee can not be said to assume. The appel-

lee was employed as a blacksmith.  His duties, as stated in the complaint were to " shoe the mules and horses connected with the mining business of said company, to sharpen coal-picks, and other tools of the miners, as well as other work when required by said defendant."  His employment being as a blacksmith, the other work referred to, but not enumerated, will be presumed to have been other work as a blacksmith.  All of the usual hazards incident to such employment were assumed by him when he entered the service. If, by reason of defective tools, or other appliance used in his said employment, the hazard was increased, he, by voluntarily remaining in the service without sufficient excuse, would assume the increased risk.

He did not, however, impliedly assume risks not connected with his work.

For instance, if, by reason of the master's negligence or failure to furnish proper appliances to be used by the miners in dislodging the coal in the mines, additional hazard attached to that part of the business as carried on, it could not be said that the blacksmith impliedly assumed such additional hazard, any more than it could be said that the miner, whose duty required him to delve, with pick and drill, in the mine, impliedly assumed any additional hazard caused by defective appliances around the blacksmith's forge. This is true, notwithstanding the fact that the miner's duty, or his master's command, may occasionally require him to visit the blacksmith's shop, and the blacksmith's duty or the master's command may occasionally call him into the mines. Cooley Torts, marginal page 560; *Chicago, etc., R. W. Co.* v. *Bayfield*, 37 Mich. 205, and cases cited.

The default of the master, which is alleged to have created the danger and caused the injury in this case, was one which would necessarily be readily apparent to any one possessed of sight.

It is charged that, in violation of an express statutory requirement, the mouth of the mine shaft was left unprotected.

We can not say, however, that this was a danger which the appellee impliedly assumed when he entered appellant's employment. While it was a danger connected with, or growing out of, the manner in which the business was done, we can not say that it was a danger connected with his service.

It is said, however, that when he was required to descend the shaft, in order to discharge one of his duties, the danger being apparent, he assumed the risk.

The complaint avers that he did this by the express command of the appellant. But, it may be said, he need not have obeyed the command. He was free to quit the service and thus avoid the danger, and that, by voluntarily continuing in the service and obeying the command, it must be presumed that he consented to take the additional risk. While in theory the employee, whose master furnishes appliances which both know are defective, is at liberty to quit the service, and refuse to be subjected to the enhanced danger, we can not close our eyes to the fact that the necessities of the struggle for existence tend strongly to deprive the employee of that theoretical independence and freedom of action. While the service can not be compulsory in the sense that the employee can be compelled to work against his will, yet the very nature of the relation existing between the parties carries with it the irresistible inference of dependence upon the one side.

In the case of *Patterson* v. *Pittsburgh, etc., R. R. Co.,* 76 Pa. St. 389, it is said by the Supreme Court of Pennsylvania, speaking of *Snow* v. *Housatonic R. R. Co.,* 8 Allen, 441, and another case : "In both these cases, the defects, from which the accident, arose, were known to the employees, but as they were injured in the discharge of duties imposed upon them by their employers, such knowledge was adjudged not to raise a presumption of concurrent negligence. This doctrine is obviously just and proper. The servant does not stand on the same footing with the master. His primary duty is obedience, and if, when in the discharge of that duty,

he is damaged, through the neglect of the master, it is but meet that he should be recompensed."

Judge Cooley says: " It has been often and very justly remarked that a man may decline any exceptionally danger·ous employment, but if he voluntarily engages in it he should not complain because it is dangerous. Nevertheless, where one has entered upon the employment and assumed the incidental risks, it is not reasonable to hold that other risks which he is directed by the master to assume, are to be left to rest upon his shoulders, merely because he did not take upon himself the responsibility of throwing up the employment instead of obeying the order." Cooley Torts, marginal page 555.

In this case the appellee was ordered to go to a certain place, and do certain work. To reach the place where the work was to be done it was necessary to use the unprotected shaft. The fact of its unprotected condition was equally open to the observation of both. The appellee obeyed the order, and, while returning and walking past the mouth of the open shaft, was injured because the shaft was not protected. In our opinion the risk arising from the neglect of the appellant to provide gates for the mouth of the shaft was not one of the risks assumed by the appellee when he entered the service, and we can not say, from the averments of the complaint, that he was necessarily negligent in obeying the order. When a master orders a servant to do something which involves encountering a risk not contemplated in his employment, although the risk is equally open to the observation of both, it does not necessarily follow that the servant either assumes the increased risk, or is negligent in obeying the order. If the apparent danger is such that a man of ordinary prudence would not take the risk, the servant acts at his peril. But unless the apparent danger is such as to deter a man of ordinary prudence from encountering it, the servant will not be compelled to abandon the service, or assume all additional risk, but may obey the order, using care in proportion to the

risk apparently assumed, and if he is injured the master must respond in damages.

It being the duty of the master to use ordinary care to provide for his employees a safe place to work, with safe tools and appliances for such work, the servant may, in such a case, assume that the master is mindful of that duty ; that he has superior knowledge of the facts, and will not wantonly expose him to unnecessary peril. There are acts which are negligent *per se,* but we can not say that walking past the mouth of an open shaft is one of them. In our opinion the complaint states a good cause of action.

We are sustained in the conclusion we have reached by the following, with many other authorities : *Pennsylvania R. R. Co.* v. *Weber,* 76 Pa. St. 157 (18 Am. Rep. 407) ; *Flynn* v. *Kansas City, etc., R. R. Co.* 78 Mo. 195 (47 Am. Rep. 99); *Keegan* v. *Kavanaugh,* 62 Mo. 230; *Snow* v. *Housatonic R. R. Co., supra;* Cooley Torts, marginal page 555; *Green* v. *Minneapolis, etc., R. W. Co.,* 31 Minn. 248 (47 Am. Rep. 785); *Ford* v. *Fitchburg R. R. Co.,* 110 Mass. 240 (14 Am. Rep. 598); *Colorado Central R. R. Co.* v. *Ogden,* 3 Colorado, 499 ; Wood Master and Servant, section 352; *Rogers* v. *Leyden,* 127 Ind. 50 ; *Cincinnati, etc., R. W. Co.* v. *Lang,* 118 Ind. 579 ; *Kranz* v. *Long Island R. W. Co.,* 123 N. Y. 1 ; Cooley Torts, marginal page 560; *Taylor* v. *Evansville, etc., R. R. Co.,* 121 Ind. 124 ; *Lake Shore, etc., R. W. Co.* v. *McCormick,* 74 Ind. 440; *Boyce* v. *Fitzpatrick,* 80 Ind. 526 ; Wood Master and Servant, section 435 ; *Pennsylvania Co.* v. *O'Shaughnessy,* 122 Ind. 588.

Appellant assigns as error the action of the court in sustaining a demurrer to the second paragraph of its answer. The paragraph in question is assumed to be affirmative in its character, and to show that the appellee voluntarily assumed the risks occasioned by the unguarded condition of the shaft. Counsel cite *Louisville, etc., R. R. Co.* v. *Orr,* 84

Ind. 50, and insist that it is precisely such an answer as was held good in that case.

We do not deem it necessary to add to the length of this opinion by copying the answer. It is enough to say that it is based on the assumption that the implied risks assumed by the appellee when he entered the service of the appellant embraced those connected with the use of the shaft, and that continuing in the service with knowledge of that which would cause an increase of hazard in the use of the shaft would evidence an assumption also of such increased hazard.

As we have heretofore shown, the appellee only impliedly assumed those risks incident to that part of appellant's business with which he was connected—the usual and ordinary risks connected with his own service. The court did not err in this ruling.

The jury returned a special verdict. At the proper time the appellant objected to the reception of the verdict and discharge of the jury, and moved that they be required to return to their room and make their verdict more full, by finding upon several matters which it was claimed were omitted, and upon which appellant insisted the jury ought to find. The motion specifies fifteen particulars in which it is claimed the verdict is defective.

A special verdict should contain a finding by the jury upon every material fact in issue necessary to constitute the plaintiff's cause of action or the defendant's defence upon which there is evidence. Works Practice, section 851, and cases cited.

There need be no finding upon immaterial facts, nor upon facts proven but not within the issues. *Johnson* v. *Putnam*, 95 Ind. 57.

A failure to find upon any material fact in issue is equivalent to a finding against the party upon whom the burthen rests to establish such fact. *Henderson* v. *Dickey*, 76 Ind. 264; *Jones* v. *Baird*, 76 Ind. 164; *Parmater* v. *State, ex rel.*,

102 Ind. 90 ; *Johnson* v. *Putnam, supra; Glantz* v. *City of South Bend,* 106 Ind. 305.

If the special verdict fails to find material facts, within the issues, which were established by the evidence, the remedy is not by motion to coerce them into making such finding, but by a motion for a new trial by the party aggrieved. *Vinton* v. *Baldwin,* 95 Ind. 433 ; *Jones* v. *Baird, supra; Indianapolis, etc., R. W. Co.* v. *Bush,* 101 Ind. 582 ; *City of Lafayette* v. *Allen,* 81 Ind. 166.

The court, therefore, did not err in overruling this motion. The jury are exclusive judges of all questions of fact. The court can instruct them as to the law, but can not dictate to them what facts they shall, or shall not, find except in a case where there is no conflicting evidence. On all controverted facts, for the court to say to the jury that they shall find that such facts exist would be a clear usurpation by the court of the functions of the jury.

The court can not coerce the jury into making a finding.

The fifth alleged error is waived.

The sixth, seventh and eighth challenge the action of the court in overruling appellant's motion for a judgment in its favor on the special verdict, and in sustaining a similar motion by the appellee.

No good purpose would be subserved by copying the special verdict into the record. It is long, and finds fully upon every material fact within the issue. The principal objections urged to the verdict are like those urged to the complaint—that they show that the absence of gates from the mouth of the shaft was not only obvious to all, but that appellee had actual knowledge of such condition, had several times passed up and down said shaft, and had at one time, by direction of appellant's officer in charge of said mine, assisted in placing bars at the mouth of the mine as a substitute for gates, and that he was guilty of contributory negligence.

We think the verdict amply sustained the action of the

court. It is unnecessary to state our reasons further than to say that the reasons which led us to reach the conclusion we did as to the sufficiency of the complaint impel us to sustain the judgment.

The only additional question raised is on the motion for a new trial, urging that the evidence does not sustain the verdict. We think it does sustain the verdict in every particular. In conclusion we feel that it is only just to appellant's counsel to say that the case has been argued by them with signal ability, and that the failure of appellant to recover is not for want of an able and exhaustive presentation of the case by them.

Judgment affirmed, with costs.

COFFEY, J., took no part in the decision of this cause.

Filed May 26, 1891; petition for a rehearing overruled Oct. 14, 1891.