## JOHN FOSTER

### *v.*

## THE CHICAGO AND ALTON RAILROAD CO.

1. NEGLIGENCE—*in guard to curve of railroad, resulting in injury to employee.* Where a switchman of a railway company, while engaged in coupling cars from the inside of a short curve, caught his foot between the main rail and the guard placed about three inches from it to prevent the wheels from jumping the track, and thereby lost his leg by having it run over; and it appeared, from the testimony of men of experience, that the guard rail was properly constructed, and that it was hazardous to couple from the inside, but comparatively safe from the outside of the curve, and that the party injured was familiar with the curve, and gave no notice to the company of any defect, it was *held*, that even if the company was guilty of negligence as to the manner in which the guard was constructed, it was slight, and that of the switchman gross, and that he was not entitled to recover for the injury.

2. ERROR—*instructions that work no injury.* Where, under the facts of a case, the plaintiff can not recover, and a verdict is found against him, the

judgment will not be reversed for errors in some of the instructions against him.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. JOHN W. SHOWALTER, for the plaintiff in error.

Mr. C. BECKWITH, and Messrs. MONROE, BISBEE & BALL, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Plaintiff in error brought this action to recover damages from defendant in error, for the loss of his leg. Plaintiff in error was, on the 12th of June, 1873, and had been for some time, in the employment of the Chicago, Danville and Vincennes Railroad Company, as a switchman. The accident occurred on that day, whilst he was engaged in coupling cars on the road. Previous to that time, that company had been, by arrangement, allowed to run its cars over the road of defendant in error, from Bridgeport to Chicago, the former company to assume all risks and to conform to all the rules and regulations of the road of defendant in error. Plaintiff in error was shown, by the evidence, to have been a railroad man, and had been engaged, to a greater or less extent, in coupling cars since 1867. He had been over the part of the road where the accident occurred, twice each day, for about six weeks, and was familiar with the track and its condition.

Plaintiff in error sustained the injury near the center of a short curve. Around this curve a guard rail was laid, which is used to prevent the car wheels from mounting the rail on the outside of the curve and running from the track. The trucks, to which the wheels are attached, are a solid frame, and, in running around the curve, the wheels run in a straight line. They go straight until their flanges strike the rail, when they are deflected, and then they go straight again until they strike the rail, thus rendering the guard rail on the inner or

short line of the curve indispensable to prevent trains, running at a rapid rate of speed, from jumping the track.

Experience has shown that this third, or guard rail, when properly placed, is best calculated to accomplish the purpose. In its construction, the guard rail, it is obvious, must not be so placed as to leave no play for the flange of the car wheel, as trains running at a rapid rate would incline to jump the track or spread the rails; and if the end of a guard rail, from any cause, should become slightly displaced, and project towards the track rail, the wheel would mount it and throw the train from the track.

The thickness of the flange of the car wheel is designed to be one and five-eighths inches, and it necessarily runs between the rail on the short line of the curve and the guard rail, which is usually a little higher than the track rail. This was a compromise track, to accommodate cars varying in width from four feet eight and one-half inches to four feet nine and one-quarter inches, which, it is claimed, requires more space between the track rail and the guard than it would had all cars passing over it been of the same width. The rails are wider at the base and top than in the space between those points, thus creating a considerable concavity midway between the top and bottom.

Whilst coupling cars, he being on the shorter side of the curve, the foot of plaintiff in error slipped into the space between the track rail and the guard rail, and, becoming fast so he could not extricate it, the car ran over it, and crushed and mangled it to such an extent that his leg had to be amputated, and he sues to recover damages, and claims that there was gross negligence in constructing the track at this curve.

It is obvious that the concavity of the two rails, placed opposite and near each other, renders it dangerous to persons walking over them. Witnesses for defendant in error say that the space between the track rail and the guard rail, on a curve of twelve and one-half degrees, as this was, should be, differing in their conclusions, from two and three-quarters to four inches, and witnesses for plaintiff in error fixing it at from

two and one-quarter to three inches. There was some contrariety in the evidence as to the width of the space at the place where the accident occurred. It appears that, at different points on this curve, the width between the track rail and the guard rail was from three to three and five-eighths inches, and there was evidence tending to show that it was three inches at the place of the accident.

It is obvious that, where a person steps into the open space between these rails, the sole of the shoe, by the weight of the person, would curve up so as to let the foot pass into the wider space below, caused by the concavity of the sides of the opposite rails, and on attempting to withdraw the foot, owing to its pressure on the inside of the sole, the outer edges could not curve downwards so as to relieve the foot, and it could not be readily disengaged. We apprehend that the weight of a man of ordinary size would force the foot into a space considerably narrower than the sole of the shoe, by thus curving it upwards, and hence such places must be dangerous to walk over.

The witnesses called by defendant in error, who testified as to the proper space that should be between these rails, were, most of them, engineers, or railroad builders, or track repairers, of long and extensive experience, and, being men of respectability, it was natural that the jury would be inclined to regard their evidence, rather than opposing theory or mathematical calculation. These were men of practical experience, and testifying from the tests of the application of trains running over curves on railroads, their business being to construct such curves with a view to practical safety to persons traveling on railroads, and with reference, also, to the safety to their employees and others rightfully on their tracks. In mathematical calculations as to the application of force to machinery, it is not an easy matter to take into account all resisting and obstructing elements that have to be provided for or overcome. Hence, practical tests are of more value than theoretical calculations. The jury seem to have been afforded every facility for ascertaining the true condition of the track, and of weigh-

ing the evidence before them, and, from the testimony as preserved in the record, we are satisfied that they could not have rightfully found but as they did. We are not able to say, from the evidence, that if the company was guilty of any negligence, it was such as to render it liable.

The evidence conclusively shows that, had plaintiff in error been on the outside of the curve, his foot could not have been caught, and the injury could not have occurred, and, with his experience, he must have known that it would have been safe, and that the other was unsafe at the ordinary space of three inches. Even at that width, if the foot were to slightly turn to one side, it would evidently slip into it, and it would be more difficult to disengage it than if the space were greater. Plaintiff in error seems to have been indifferent to his safety, and even highly negligent. When safety and danger were before him, he seems to have chosen the latter; and it is clear to our minds that, had he used ordinary prudence, the accident would not have occurred. This, he was bound to do, unless the company was guilty of gross negligence.

The evidence shows that plaintiff in error could have safely coupled the cars from the outer side of the curve. He had an assistant, who could, under his directions, have signaled the engine-driver, or he could have given the signal and then have walked across the track to the outside of the curve, dropped the pin, and then left the track with at least comparative safety. The company proved that the guard rail was laid three inches from the track rail, and that they had endeavored to keep it at that distance. The proof tended to show that to be the usual and proper width; but if it was not, or if it was wider, plaintiff in error was a railroad man of considerable experience, and must have known if it was hazardous, and if so, it was his duty to have reported it to the proper officer. He could judge as well whether his foot could get into the space as could an engineer. It required no special education or complicated mathematical calculation to determine that question, and plaintiff in error, no doubt, by observation, could have determined whether it was dangerous to persons

walking on the track, whether he could have determined or not that it could have been reduced in width and safely answered for the passage of cars over the curve. He gave no notice, but continued to run all risks without using the opposite side of the track, which would have been safe.

We, from the evidence, are unable to say that the railroad company was guilty of negligence, or if it could be so held, it was slight, and that of plaintiff in error was gross. Hence there are no grounds for a recovery, and had the jury found differently, the verdict would not have been permitted to stand. This being true, even if there are errors in some of the instructions, we would not reverse and remand the cause to reach the same result. It could but lead to expense and vexation, without being of any benefit to any one.

It is apparent that substantial justice has been done, and the judgment must be affirmed.

*Judgment affirmed.*