# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

### First District—October Term, 1885.

Chicago, Burlington & Quincy R. R. Co.

v.

Nellie Smith, Adm'x, etc.

1. Duty of employer in providing safe machinery.—An employer is required to exercise reasonable and ordinary care in providing suitable and safe machinery for persons in his service, but the machinery is not required to be the best or most improved kind, or to be absolutely safe.

2. Same.—An action to recover damages for the death of a switchman caused as alleged by the negligence of the railroad company in not putting the rails further apart, and in not blocking the switch. *Held*, that as the evidence shows the construction to have been that ordinarily used and to have been reasonably safe, no recovery can be had.

3. Where defects known to servant.—Where defects in machinery or other appliances are as well known to the servant as to the master, the servant must be regarded as voluntarily incurring the risks resulting from its use unless the master, by urging upon the servant or coercing him into danger, or in some other way, directly contributes to the injury.

Appeal from the Superior Court of Cook county; the Hon. Rollin S. Williamson, Judge, presiding. Opinion filed January 6, 1886.

This was an action on the case brought by Nellie Smith, as administratrix of the estate of George A. Smith, deceased, against the Chicago, Burlington & Quincy Railroad Company. The

(119)

declaration alleges that on July 15, 1881, the deceased was in the employ of the defendant as yard switchman; that the duties of his employment required him to assist in the switching, coupling and uncoupling of cars, etc.; that the defendant did not use proper care in constructing its road, but on the contrary the rails of certain side tracks, connected by a switch to the main track, were imperfectly and badly constructed in this, that the rails of said side track were in too close proximity to each other, and were without blocks or other protection so as to prevent accidents to employes who might have occasion to pass over and about said rails, of which the defendant had notice, etc.; that on July 15, 1881, it was necessary for deceased, in the prosecution of his employment, to uncouple certain freight cars which were moving along the said main track, and while, with due care, he was attempting to uncouple said freight cars one of his feet was caught between two of the rails of said side track, and he was unable to extricate himself and was thereby killed; that he left surviving him the plaintiff, his wife, and Maud Smith, his daughter.

The defendant pleaded the general issue. There was a jury trial resulting in a verdict for the plaintiff for $5,000, on which there was judgment, and the plaintiff appealed to this court. The facts sufficiently appear in the opinion of the court.

Messrs. DEXTER, HERRICK & ALLEN, for appellant.

Messrs. MONROE & LEDDY and Mr. S. K. Dow, for appellee.

WILSON, J. It is manifest from reading the evidence that the plaintiff was not entitled to recover unless the defendant was guilty of negligence in laying the rails of its side track too near to each other, or in omitting to place blocks or other protection between the rails to prevent accidents to its employes. This is the only negligence alleged and there is no proof of any other.

The deceased had been in the employ of the defendant for

a year as a freight brakeman, and about two months prior to the accident went to work as yard switchman in defendant's freight yard at Western avenue, Chicago.    The yard consisted of numerous tracks diverging from one main track. Trains of loaded cars were run into the yard, and the business of the gang of men to which deceased belonged, consisted in separating the cars in these trains, and from them making up other trains.    This involved the handling of several hundred cars daily.    One of the switchmen would uncouple the cars at the point in the train where they wished to divide it, while another would set the switch so as to throw the train on to the desired track.

At the time of the accident deceased had stepped in between two cars, near the switch, to uncouple them, the train being at the time slowly in motion, and as he was moving along with the train, trying to remove the coupling pin, his foot was caught between the rails, and being unable to extricate it, he was run over and killed.    It is claimed by appellee that it was the duty of the railway company to have had the rails placed farther apart, or to have them blocked, and thereby have made them less dangerous, and thus, presumably have prevented the accident.

It is not disputed that the tracks and switches were constructed in substantially the same manner as those of other well-built and well-operated roads, nor is it claimed that the train, at the time of the accident, was negligently or improperly managed; but the contention is that the tracks might have been made safer by a different mode of construction or by new or improved appliances.

The rule is now too well settled to admit of discussion that while an  employer is required to exercise reasonable and ordinary care and diligence in  providing suitable and  safe machinery for persons in  his service, the machinery is not required to be the best or most  improved kind, or to be absolutely safe.    It is sufficient if according  to the ordinary experience and observation of prudent men it is reasonably safe. Negligence will not be imputed merely because there may possibly be improved and better kinds of machinery.    Camp.

Point M'f'g Co. v. Ballou, 71 Ill. 417 ; N. Chi. Rolling Mills
Co. v. Monka, 4 Bradwell, 664; C. & N. W. R. Co. v. Schen-
ring, 4 Id. 533; Simmons v. Chi. & Tomah R. R. Co., 110
Ill. 347 ; L. S. & M. S. Ry. Co. v. McCormick, 74 Ind. 440;
Chi. M. & St. P. R. R. Co. v. Standart, 16 Bradwell, 148 ;
Fort Wayne R. R. Co. v. Gildersleeve, 33 Mich. 133.

In L. S. & M. S. Ry. Co. v. McCormick, *supra*, the precise
question involved in the present case, namely, whether a fail-
ure to block switches constitutes negligence, the Supreme Court
of Indiana used the following language : " Neither compa-
nies nor individuals are bound as between themselves and their
servants to discard and throw away their implements and ma-
chinery upon the discovery of every new invention which may
be thought or claimed to be better than those they have in
use ; but if they take ordinary care and exercise ordinary
prudence to keep their implements and machinery in sound
repair, so that harm does not result to the servant for want of
such sound condition of their implements or machinery used,
then such individuals or companies will not be responsible to
servants for any injury which may occur to them in the use
of such implements or machinery."

In Fort W. R. R. Co. v. Gildersleeve, *supra*, the plaintiff
was injured while attempting to couple a car, the coupling of
which was lower than those in common use. Cooley, C. J.,
said : " We do not perceive any ground upon which the plaint-
iff's case can be safely planted which comes short of this,
that the employer is under obligation to his servants, under
all circumstances, to make use of the safest known appliances
and instruments, and is responsible for any failure to discard
what is not such, and to supply its place with something safer.
Any doctrine so far reaching as this would manifestly be de-
structive of the general rule, and would almost make the em-
ployer the guarantor of his servant's safety in his employ."

In Smith v. St. L., K. C. & N. Ry. Co., 69 Mo. 32, the
court said : " Is the fact that there is another kind of rail, of
which a general rail might be constructed which would be
safer for employes, and would equally answer its purpose,
sufficient to render the company liable to an employe for an

C., B. & Q. R. R. Co. v. Smith.

injury received by him in consequence of the failure of the company to use the other kind of rail? If railroad companies are required to take up their rails whenever a better rail is manufactured, because it would afford greater security to their employes, and to discard their machines whenever more perfect machinery is invented, or be liable to any employe who may be injured in using the old machinery, it would impose upon them pecuniary burdens which would compel them to suspend the operation of their road." The books are full of similar cases on this subject, and they all speak a common language.

The burden of proof was on the plaintiff to show that the defendant was guilty of negligence in not putting the rails further apart or in not blocking the switch. As to the former the evidence is uncontradicted that the distance between the rails, or what is called to throw off the switch, is the same on defendant's road as that commonly in use on other roads, namely five to five and a half inches. The plaintiff offered evidence tending to show that the space between the rails might be increased without interfering with the operation of the trains running over the switch. Conceding this as a fact to have been found by the jury in favor of the plaintiff, the proposition of the plaintiff comes to this, that it being shown that a mode of construction could be adopted which would make the switch safer to those walking over it, the mere failure to adopt such mode of construction would be negligence. Such, as we have seen, is not the law.

As to the blocking the most that can fairly be claimed for the plaintiff, under the evidence, is that the device of blocking is still an experiment and of doubtful practicability. At the date of the accident it had been tried only to a very limited extent, and whether it would ultimately be found useful and answer the purpose designed was not fully determined. It had not been adopted by most of the principal roads by reason of certain alleged practical difficulties; and one of the plaintiffs' witnesses testified that, like safety switches or patent couplings, its utility was not yet determined. If, however, it be conceded that its adoption was practicable and that its use would have added to the safety of persons walking over the

tracks, it does not follow that the defendant was guilty of negligence in failing to adopt it, for the reasons already indicated.

But there is another aspect of the case, in view of which the plaintiff would seem to be not entitled to recover. The plaintiff's intestate had been at work as switchman in the yard in question for a period of two months and upward, immediately preceding the accident. He had also previous thereto been for a year a brakeman on defendant's freight trains. He was presumably a man of intelligence, and he had been in the yard long enough to have become cognizant of the danger in coupling and uncoupling cars at the place where the accident happened. He was as well aware of the danger as was the defendant. Indeed the defendant's knowledge is only the knowledge of its servants and employes. If with this knowledge deceased chose to continue in the defendant's service, he must be held to have assumed the risks incident thereto. The law is well settled that where the defects in the machinery or other appliances are as well known to the servant as to the master, the servant must be regarded as voluntarily incurring the risks resulting from its use, unless the master by urging upon the servant or coercing him into danger, or in some other way, directly contributes to the injury. Pennsylvania Co. v. Lynch, 90 Ill. 333 ; Clark v. C., B. & Q. R. R. Co., 92 Ill. 43 ; I. B. & W. R. R. Co. v. Flanigan, 77 Ill. 365 ; Naylor v. C. & N. W. Ry. Co., 53 Wis. 661 ; Foster v. C. & A. Ry. Co., 84 Ill. 164; Simmons v. The Chicago & Tomah R. R. Co., 110 Ill. 340. So far as appears the condition of the tracks and switch, at the time the deceased was killed, was the same in all respects that it had been during the entire time of his service. Having thus had an opportunity to become acquainted with the risks of the situation, and accepted them, his representatives can not complain for his subsequent injury.

We are constrained to hold that under the case as shown in the record the plaintiff was not entitled to recover. The judgment of the court below is accordingly reversed and the cause remanded for a new trial.

Reversed and remanded.