RAILWAY COMPANY v. DAVIS.

Decided March 21, 1891.

1. *Unblocked frogs—Risks of employment.*

Where a brakeman enters the service of a railroad company contemplating the use of unblocked frogs, he assumes the attendant risk; whether in such case the company would have promoted the safety of its operatives by substituting blocked for unblocked frogs, and whether its duty of reasonable care exacted this, are questions that cannot affect its liability.

2. *Master's liability—Defective drawhead.*

A railway company will be liable to an employee for an injury occasioned by the use of a drawhead which had a patent structural defect, without proof that it had notice of the defect; but not for an injury caused by the depression of a drawhead which might have occurred during the trip and without negligence on the company's part.

APPEAL from *Pulaski* Circuit Court.

JOSEPH W. MARTIN, Judge.

Action by the widow and the next of kin of J. M. Davis against the St. Louis, Iron Mountain and Southern Railway Co. The complaint alleged that deceased, a brakeman in defendant's service, while performing his duties at Bald Knob, Ark., in uncoupling a car, was, by reason of a defective and

unsafe coupling and a dangerous and unblocked frog or switch, detained on the track longer than was usual or necessary, and was run over by defendant's cars and killed.

In attempting to uncouple a car, deceased's foot was caught in an unblocked frog, and the train passed over him, severing his limbs from his body. While under the car he told another that he had tried to pull the pin, but could not; then got his foot caught and tried to throw himself across the rail so as to protect his body, but failed. There was testimony that the hole in which the coupling pin fitted was too small. One witness said that the drawhead "looked as if it would go under too far and catch the pin and hold it."

There was testimony that blocked frogs were required to be used in Missouri by statute, and that some roads in other States used them. As to whether their use would diminish the risk incurred by brakemen, the testimony conflicted. One witness testified that their use would increase the risk of derailment. Deceased had been in defendant's employment as brakeman for two years.

The court charged the jury as follows:

1. It was the duty of defendant to exercise reasonable care and prudence, to furnish and keep safe tools and appliances for its employees to use in carrying on its business of running trains; and if you believe from the evidence that defendant neglected to perform this duty, and that, by reason thereof, Davis, while in the performance of his duties as an employee of the defendant, was killed without fault or neglect on his part contributing directly thereto, you must find for the plaintiff.

2. Davis did not forfeit the right to recover for injuries, if any occurred by reason of defendant's neglect of duty, from merely using defective appliances, unless the defect was so apparent that a prudent man would not have continued in defendant's employ while such appliances were in use. Nor does the knowledge of Davis that open frogs were used excuse defendant, if such frogs were defective or improper appliances and caused the injury, unless you believe

that the defect was such as that it was known to Davis, or ought in the exercise of ordinary care to have been known to him, to be dangerous and unsafe to remain in defendant's employ while such frogs were used.

4. If the jury believe from the evidence that defendant furnished to Davis a defective drawhead and coupling pin, and knew, or by reasonable diligence should have known, of such defect, and that by reason thereof, while in the performance of his duty as a brakeman of defendant, Davis was delayed in his efforts to uncouple the cars, and while so engaged, and in consequence of such delay, he, without negligence on his part, was caught in a frog and injured, and that he would not have been caught and injured if the coupling had not been defective, you must find for the plaintiffs.

From a judgment in favor of plaintiffs defendant has appealed.

*Dodge & Johnson* for appellant.

1. The verdict is not sustained by the evidence. There was no evidence of the defect of the drawhead or coupling apparatus, or that the injury was caused thereby. 51 Ark., 477; 46 *id.*, 566; 13 S. W. Rep., 382.

2. The using unblocked rail or switch is not negligence, there being no statute requiring it. 35 Ark., 615; 28 A. & E. R. Cas., 488; 118 Ill., 45; 71 *id.*, 418; 110 *id.*, 340; 74 Ind., 447: 49 Mich., 466; 69 Me., 320; 32 Mo., 411; 3 Hun, 338; 42 Ala., 672.

3. The knowledge, or the opportunity of knowing, of the character of the frog, and the election to work with it in the condition it was constructed, bars the right of recovery, for the reason that the employee assumed the risk as one of the usual hazards of the employment. 48 Ark., 347; 14 S. W. Rep., 243; 20 Pac. Rep., 711; 39 Ark., 38; 41 *id.*, 542; 41 *id.*, 392; 30 A. & E. R. Cas., 163; 147 Mass., 603; 135 *id.*, 398; 139 *id.*, 580; 140 *id.*, 150; 71 Mo., 164; 12 A. & E. R. Cases, 210; 13 N. W. Rep., 508; 78 N. C., 300; 22 Ind., 29; 20 Mich., 105; 32 Ia., 357; 50 Mo., 302;

67 Mo., 239; 51 Ark., 476; 4 Or., 52; 13 S. W. Rep, 801.

4. The first and third instructions were erroneous. The question of infancy, minority or no experience was not involved. He knew or ought to have known the frogs were unblocked, and, being *sui juris*, knew of the danger and elected to work over these unblocked frogs, and thus took all risks and hazards of that particular employment. An employee is paid to assume all risks and hazards incident to his employment. Thompson on Neg., 1053; 16 C. B. (N. S)., 692; Wood, Master and Servant, sec., 382; 61 Iowa, 714; 21 Cent. L. J., 53; 33 Mass., 133; 3 Dill. C. C., 320; 50 Mo., 304; 29 Conn., 548; 5 A. & E. R. Cas., 489; 92 Pa. St., 280; 8 Pac. Rep., 415.

*Blackwood & Williams* and *Sam W. Williams* for appellee.

1. Unblocked frogs, especially those without base or floor, are dangerous. 41 Fed. Rep., 194–196; 4 S. W. Rep., 937; 7 N. E. Rep., 56; 13 S. W. Rep., 716: 14 *id.*, 654.

2. The plaintiff's instructions were taken from 48 Ark., 346; 44 *id.*, 44. The railway company owes it to its servant to provide a *safe track* and sound and sufficient cars. 44 Ark., 300; 48 *id.*, 344; 14 S. W. Rep., 90; Wood, M. & S., secs., 344, 429; Whart. on Neg., sec. 210; 39 Ark., 17; 35 *id.*, 602; Deering on Negl., sec. 198; Beach on Negl., sec. 124; 14 Fed. Rep., 280; 100 U. S., 213, 80 N. Y., 46; 49 N. Y., 60. The same vice runs through them all. They invade the province of the jury. 13 S. W. Rep., 716; *ib.*, 802.

3. The court's instructions, 1, 2 and 3, are taken literally from 48 Ark., 345, 347.

4. Contributory negligence. It is not the law that if deceased knew or might have known of the unblocked condition of the frog, and continued in the employ of the company, that alone would prevent him from recovering. 13 S. W. Rep., 716; 52 Ark., 370; 13 S. W. Rep., 803; 14 *id.*, 655; 4 S. W., 939; 48 Ark., 347. It was not negli-

gence to go in between the cars while they are moving at a slow speed. 37 Ark., 526. Very slight evidence will charge the master with notice of defective machinery, if indeed he is not compelled to know of its condition at his peril. 45 Ark., 297; 1 Greenl. Ev., secs. 78, 79.

HEMINGWAY, J. Whether the defendant would have promoted the safety of its operatives by substituting upon its road blocked for unblocked frogs, and whether its duty of reasonable care exacted this, are questions that cannot affect the result in this case. The plaintiff charges negligence in the use of unblocked frogs, not because they were badly constructed, out of repair, or exposed operatives to latent dangers, but because a different kind of frog would have been less dangerous to operatives. Unblocked frogs were in universal use on the roads in ,this State, including the entire road of the defendant. The injured employee knew, when he entered the defendant's service, that its frogs were unblocked; and if there was danger in their use, he knew it was an incident to the service he was entering. When a master employs a servant to do a particular work with a particular kind of implement or machine, he agrees that they are sound and fit. for the purpose intended, so far as ordinary care and prudence can discover, but does not agree that they are free from danger in their use. The servant agrees to use in the service the particular kind of implement or machine; and if under such circumstances harm comes to him, it must be ranked among the risks he assumed when he entered the service. *Lake Shore R. Co.* v. *McCormick,* 74 Ind., 447; *McGinnis* v. *Canada S. B. Co.,* 49 Mich., 466; *Sweeney* v. *B. & J. E. Co.,* 101 N. Y., 520; *Diehl* v. *Lehigh Iron Co.,* 21 Atl. Rep., 430. Such is the express holding of the courts of Massachusetts, Illinois and Kansas, in cases in which the negligence charged was in the use of unblocked frogs; *Chicago R. Co.* v. *Lonergan,* 118 Ill., 41; *Wood* v. *Locke,* 147 Mass., 604; *Rush* v. *M. P. R. Co.,* 28 A. & E. R. Cases, 484; and this court so ruled in

1. Risks assumed by brakeman—Unblocked frogs.

the case of *Davis* v. *Railway*, 53 Ark., 117; see *Grand* v. *Mich. R. Co.*, 47 N. W. Rep., 837–841.

We think confusion has sometimes crept into cases like this, from the effort to determine them by the rules of contributory negligence. We do not think they necessarily furnish the correct criterion for determination, but that the contract of employment is a necessary element of consideration. It is an elemental principle that an employee, when he enters into service, agrees to assume all risks ordinarily incident to his employment; and if he is of mature years, experienced in the business undertaken, and knows what instrumentalities are to be used by him, he contracts that he will assume the risks incident to using that class of instrumentality, as well as any other risk incident to the business; and if the master uses proper care in providing the kind contemplated, the employee cannot complain, although some other kind would have been less dangerous; his contract hushes his complaint, regardless of the employer's negligence. Such case is to be distinguished from that of the traveler upon a highway who encounters an obstruction negligently erected by another, which he reasonably believes he can pass in safety, but is injured in attempting it, as was the case in *St. Louis R. Co.* v. *Box*, 52 Ark., 368; for in the latter case the right of recovery is unfettered by the doctrine of assumed risks, and will be defeated only if the negligent act of the traveler contributed to his injury. Whether it can be distinguished from the cases in other States where an employee continued service after an instrumentality fell out of repair and thereby received injury, is a question we need not consider. See *Snow* v. *Housatonic R. Co.*, 8 Allen, 441; *Patterson* v. *Pittsburg R. Co.*, 76 Penn. St., 389; *Colorado R. Co.* v. *Ogden*, 3 Col., 500; *Lasure* v. *Graniteville Mfg. Co.*, 18 S. C., 276. As the deceased took employment contemplating the use of unblocked frogs, no instruction should have been given as to negligence predicated upon that fact, and the court erred in giving the first and third instruction on the prayer of the plaintiff.

Defendant insists that the court erred in giving plaintiff's <sup></sup> 2. Master's liability for use of defective drawhead. fourth instruction, for the reason that there was no evidence to justify it.   We think otherwise.   The deceased went between two cars to uncouple them ; while thus engaged, he was injured.   There was evidence that he attempted to draw the coupling-pin while the cars were slowly moving, and that the pin was fast and detained him in this attempt until he reached a frog where his foot was caught and the injury done.   It also tended to show that the hole in which the pin rested was too small and held the pin fast, and that this was the reason why it was not drawn before the frog was reached. If this is true, it tended to prove a discoverable structural defect in the drawhead, and was proper for the jury to consider in determining whether the injury was caused by defendant's negligent failure to furnish safe cars.   If there had been no evidence except as to the depression of a drawhead, the instruction would not have been justified, for there was no proof that the defendant knew or could have known of it.   It might well have occurred during that trip and existed in spite of all proper care by defendant, and, as the burden of proof was on plaintiff, it would not justify a finding of negligence.   *St. Louis R. Co.* v. *Gaines*, 46 Ark., 567.

Reversed and remanded for a new trial.