Sheets, Administrator, *v.* The Chicago and Indiana Coal Railway Co.

No. 16,821.

## Sheets, Administrator, etc., *v.* Chicago and Indiana Coal Railway Company.

**Master and Servant.—Railroad.**—*Unblocked Frog.*—*Injury to Brakeman.*—*Ignorance of Blocking Device.*—*Assumption of Risk.*—A brakeman upon a railroad not using blocks in its frogs and switches, who is killed in the line of his service by getting his foot caught in an unblocked frog, and who at the time of the accident had no knowledge that such protecting devices as blocks were in use upon any railroad, will be held to have assumed the risk, although it is averred that he had no time or opportunity to observe whether or not the particular frog was blocked.

**Same.—**"*Kicking*" *Cars Into Switch.*—*Rule of Company.*—Where a freight conductor gives an order to place cars upon a side track, and couple them with others standing upon said side track, without instructions as to the manner of doing it, and the trainmen in executing the order make a "kicking" switch, and a brakeman, voluntarily going in front of the detached, uncontrolled, and rapidly moving cars to make the coupling gets his foot fastened, in an unblocked frog, and is run down and killed, an action will not lie against the company, even though the latter had in force no rule prohibiting the making of switches of the character alleged.

**Same.** — *Fellow-Servants.* — *Incompetent Fellow-Servant.* — *Voluntarily Going into Danger Caused by.*—*Attempting to Make Perilous Coupling.*—An engineer is a fellow-servant of a brakeman, and a recovery against the railroad company for the death of the brakeman by a negligent act of the engineer in kicking cars into a siding at an excessive speed, even if the company had knowledge of his incompetency, and the brakeman had not, will not be allowed where it appears that such brakeman being experienced, and with knowledge of the excessive speed, and of the danger of attempting to couple the detached cars to others standing upon the sidetrack, undertook such perilous task as a brakeman, even when acting in pursuance of an order to couple the cars, as he is not bound to do so under such dangerous conditions.

From the Fountain Circuit Court.

*E. F. McCabe*, for appellant.

*I. E. Schoonover, A. Schoonover, W. H. Lyford* and *W. J. Calhoun*, for appellee.

DAILEY, J.—This was an action for damages, brought by the appellant against the appellee, for alleged injuries resulting in the death of John Sheets, appellant's intestate. The complaint was in four paragraphs. The court below sustained a demurrer to the first, second and fourth paragraphs. Appellant, thereupon, withdrew the third paragraph, and elected to stand by the remaining paragraphs, and judgment on the demurrer was rendered in favor of the appellee. The appellant assigns as error the ruling of the court as above stated; and this leads us to a consideration of the respective paragraphs of the complaint. Stripped of all legal verbiage, the first paragraph alleges, in substance, that appellant's intestate was a brakeman on appellee's line of railroad; that while the deceased was discharging his duties in that capacity, he was called upon by the conductor to couple some cars then being switched on to a side track, to other cars then standing on the same track; that he went in front of the moving cars, and while engaged in adjusting the link or pin so as to make the coupling, his foot caught in an unblocked frog or switch-angle, resulting in the deceased being thrown down, run over by the cars, and killed. Negligence is charged against the appellee in not having the frog or switch "blocked" with a piece of wood, which, it is alleged, would have prevented the accident. It is further alleged that the decedent did not know, and had no means of knowing that the place in question was not blocked; that at no time while he was in appellee's service did he have the means or opportunity to inspect this frog or angle to discover said defect in the track; that at the time he was killed, the ground was covered with snow, so that it was then impossible to discover the absence of the block. Up to this point the complaint seems to be drawn upon the theory that the deceased had no reason

to suspect that the frog or angle was not blocked.    It is not charged but that he knew the frog or angle was there; the inference, therefore, is that he did know it; but the excuse is made for him, that at no time did he ever have an opportunity to observe that there was no block at this point.    The further inference to be drawn from this allegation is, that the deceased presumed, or had the right to presume, that at this point there was a block.    It is not alleged in the paragraph, or elsewhere in the complaint, that blocks were in use at any frog, switch or angle on the entire road.    So it can not be claimed that deceased had any right to suppose that this particular place was blocked.    Indeed, this paragraph, by express terms, shuts out any such supposition, for it is alleged that:    "Said decedent did not at any time know of the use of such blocks or other device to protect persons on railroad tracks against such accidents."    The conclusion must be then, that the deceased had no reason to suppose that any frog, switch or angle, with which he might come in contact, would be blocked, for he did not know that such devices were in use on this or any other railroad, as he had never seen nor heard of them.    The only conclusion that can be drawn from the entire paragraph is, that none of the switches or frogs on this railroad were blocked, and the deceased knew it.    It is true, the paragraph does not state how long he had been in the service, but it is not claimed that he was inexperienced, nor that he was not well acquainted with the general condition of the tracks, frogs and switches on the road.    The duties of a brakeman include the handling of switches, and the coupling and switching of cars, and in the performance of these duties, he could readily learn if blocks had been provided to lessen the danger of the service.    The danger incident to an unblocked frog or switch is in no sense a latent one.    On

Sheets, Administrator, *v.* The Chicago and Indiana Coal Railway Co.

the contrary, it must be obvious to the most casual inspection. Any man of mature years must know that if he puts his foot into an acute angle formed by two converging lines of rail, there will be danger of his foot being caught or held thereby. It is the law that, where a man engages in a service, the duties of which require him, at times, to walk over, across or about such angles, which he knows to be unblocked, he must be held to know that the making of a misstep is one danger he will have to meet, and against which he will have to guard. If, with this knowledge, he elects to continue in such service, then, under the law, he must be held to have assumed the dangers so plainly incident thereto. Upon this principle, the courts have held that a brakeman, who voluntarily continues in the service of a company, on the line of whose road the switches and frogs are not blocked, can not recover for injuries received from having his foot caught therein.

In the *Lake Shore, etc., R. W. Co.* v. *McCormick,* 74 Ind. 440, the facts found by the jury, in their answers to special interrogatories, were almost identical with the allegations of this paragraph, and as applicable to the facts so found, the court said: "The servant, when he enters into the service of an employer, impliedly agrees that he will assume all risks which are ordinarily and naturally incident to the particular service; and the master or employer impliedly agrees that he will not subject his servant, through fraud, negligence or malice, to greater risks than those which fairly and properly belong to the particular service in which the servant is to be engaged. The master's obligation is not to supply the servant with absolutely safe machinery, or with any particular kind of machinery; but his obligation is to use ordinary and reasonable care not to subject the servant to extraordinary or unreasonable danger." The court,

therefore, held, that upon the law and facts found by the jury, the company was not guilty of such negligence as made it liable for the injury received; but that it was the result rather of an accident, the risk of which the employe must be deemed to have taken upon himself when he entered upon the service. The learned counsel for the appellant, in the case at bar, evidently was aware of this decision, and has attempted to evade it, by alleging in substance that the deceased "did not know, and had no time, or opportunity, or means of learning of the want of a block or other device at said point in the angle where his foot was caught,   *   *   *   and at no time, while in defendant's service, did he have the means or opportunity to inspect said angle to discover said defect in said track." The want of information alleged is limited to this particular place; but when we consider the other allegation, that he "did not at any time know of the use of such blocks or other devices to protect persons on railroad tracks against such accidents," we must understand that the deceased had never seen a block or other device used in any frog, switch or angle on the line; that there were none used, and he knew it; so this allegation of a want of knowledge of the condition of this particular switch does not aid the complaint, as he had no reason to suppose, and did not assume that there was a block in the switch.

The appellant apparently attempts to distinguish this case from the one from which we have quoted, by the averment that such blocks have been in use for over fifteen years; that they are no longer an experiment, but a safe and cheap device; and that they are used by all the principal railroads in the United States. These allegations confirm the view we take of this paragraph, as already expressed, viz., that it, in effect, says there were no

blocks in use on this road; that the deceased knew the fact, and with such knowledge continued in the service.

The claim is, therefore, made that the appellee was negligent in not constructing its track in a proper manner, or in not furnishing proper equipment therefor, so as to make the same safe to the employes while engaged in the discharge of their duties. Conceding that these blocks are a practical device, and reasonably adapted for the purpose of protecting frogs and switches, the fact that there were no blocks used could be easily ascertained by any one inclined to look at them; the danger incident thereto was obvious, but easily avoided by the exercise of reasonable care. It is not claimed that the switch was improperly constructed, or that it was not suitable for the purposes for which it was intended, or that the danger to persons in getting their feet caught therein could not be avoided. It is not a case of the use of obviously defective machinery or implements with which the deceased was called upon to work, of which defects he had no knowledge; it is not a case of conditions involving secret defects not obvious to the servant, the existence of which the master knew or ought to have known. That the switches on this line of road were unblocked, was known to both master and servant, and whatever danger was incident thereto, was apparent to both. There was no fraud, no suppression of conditions, and no misunderstanding as to contingencies.

In *Griffin* v. *Ohio, etc., R. W. Co.*, 124 Ind. 327, it was said: "It has been too long settled to admit now of controversy that when a servant enters upon an employment which is, from its nature, necessarily hazardous, he assumes the usual risks and perils of the service. In such cases it is held that there is an implied contract on the part of the servant to take all the risks fairly incident to the service, and to waive any right of action

against the master resulting from such risk.    *    *    *
Where the danger is alike open to the observation of all,
both the master and servant are upon an equality; and
the master is not liable for an injury resulting from the
dangers of the business.''

It was also held in *Ames, Admr.,* v. *Lake Shore, etc.,
R. W. Co.,* 135 Ind. 363, that when an employe is in-
jured by defective appliances in the line of his duty, and
the employe knew of such defect, or had an equal oppor-
tunity with his employer to know thereof, damages can
not be recovered for injuries resulting therefrom.

In *Jenney Electric Light, etc., Co.* v. *Murphy,* 115 Ind.
566 (568, 569), this court said: ''The employer does
not, however, become an insurer of the employe against
injury, nor does he covenant to supply tools and ap-
pliances that are safe beyond any peradventure or con-
tingency, nor to furnish implements of the best, or of
most approved or any particular design.''

In the *Lake Shore, etc., R. W. Co.* v. *McCormick, supra,*
446, it was said: ''Neither companies nor individuals are
bound, as between themselves and their servants, to dis-
card and throw away their implements or machinery upon
the discovery of every new invention which may be
thought or claimed to be better than those they have in
use; but if they take ordinary care and exercise ordinary
prudence to keep their implements or machinery in sound
repair, so that harm does not result to the servant for want
of such sound condition of the implements or machinery
used, then such individuals or companies will not be re-
sponsible to servants for any injury which may occur to
them in the use of such implements or machinery.''

The doctrine is well sustained by authority, that if the
danger incident to the use of frogs and switches, or other
appliances or machinery, was such as to be easily ap-
parent to the servant, and he saw fit to continue in the

service under such conditions, then he assumed all the risk incident thereto. *Umback* v. *Lake Shore, etc., R. W. Co.*, 83 Ind. 191; *Spencer* v. *New York Central, etc., R. R. Co.*, 67 Hun, 196; *R. W. Co.* v. *Davis*, 54 Ark. 389; *Appel* v. *Buffalo, etc., R. W. Co.*, 111 N. Y. 550.

It is held, generally, that the operation of a railroad without blocking its frogs is not, as a matter of law, negligence. *Missouri Pacific R. W. Co.* v. *Lewis*, 24 Neb. 848; *Hewitt* v. *Flint, etc., R. R. Co.*, 67 Mich. 61.

In view of these authorities, we think the court did not err in sustaining the demurrer to the first paragraph of the complaint.

The facts alleged in the second paragraph, briefly stated, are as follows: Defendant's train was at Oxford, Indiana. The conductor in charge gave orders that five cars in the train should be detached therefrom and placed upon the side track, and that they be coupled to other cars then standing upon the side track; that the conductor ordered the deceased to do said coupling; that in pursuance of said order, the five cars were detached from said train, and were by the engine taken past the switch stand; the switch was then opened, and the engine being put in rapid motion, the cars were given what is termed a "kick;" that as they came onto the side track the deceased, in obedience to said order of the conductor, "went in front of said moving cars to arrange the link and pin so that the coupling could be made as soon as the cars came together, so that they could not bounce apart, and while so engaged, and while moving along with said cars and arranging said link and pin, his foot caught in an unblocked space between two rails and he was thrown down by the moving cars and killed."

The negligence on the part of the defendant, charged in this paragraph, and upon which a right of recovery is

sought to be maintained, is that the death of the deceased was caused by the negligence of the appellee in failing to "provide any rules regulating the 'kicking' of cars into side tracks." It is alleged that the "kicking" of cars is extremely dangerous, and should never be resorted to unless absolutely necessary; that while the appellee had in force a rule prohibiting the making of switches unless absolutely necessary, yet it failed to make a rule regulating or prohibiting "kicking switches."

It is then averred that: "If some rule had been enacted by defendant prohibiting such switches, except where absolutely necessary, the decedent would not have been run down and killed." By the terms of this paragraph, we are told that a train crew, of which deceased was a member, was engaged in making a running or "kicked" switch. It is not averred that any one ordered the work done in the particular manner observed on this occasion. The only instructions given by the conductor were, that the cars should be put in on a side track. These trainmen, the coemployes of the deceased, with whom he was then working, for some reason saw fit to do this work by what is termed "kicking" the cars in on the side track. It is said that this was a dangerous way to side-track cars. It was probably so, because the cars were set in rapid motion, and allowed to run in on the side track, detached from the engine or any other controlling power. This was the act of coemployes of the decedent, in the commission of which he assisted, and by reason whereof, he was injured. He must be presumed to have known of all the dangers incident thereto. He knew what was being done; the danger was apparent to him. He ran in front of those rapidly moving cars thus detached from the engine, and while so doing, attempted to arrange the coupling attachments. This exposed him to the hazardous chances of missing his footing, of stumb-

ling, slipping or getting his foot caught, and thereby being thrown in front of the wheels. It is not pretended that any one told him to do this, or that it was necessary or proper for him to do so. The act was voluntary on his part, and it must be conceded to have been reckless, careless and negligent. The conditions confronting the decedent, were such as to suggest danger to a degree that would have justified him in refraining from such an exposure, and especially so in the absence of any order requiring him to go in front of the moving cars. But, in this paragraph, appellant bases his right of recovery on the alleged fact that appellee had no rule, regulating the manner of making switches of the kind described, or prohibiting them being made, except when absolutely necessary. He admits, and expressly avers, that appellee had a rule in force prohibiting the making of "running" switches, except when absolutely necessary, and regulating the manner in which the same should be done, when occasion required, but complains because there was no similar rule relative to "kicking of cars into switches." Just what difference there is between a "running" switch and a "kicking" switch, does not appear. Probably the appellant means by a running switch a case where the car is pulled by the engine until it attains a certain velocity, then the engine is uncoupled, the speed of the engine is increased so that it pulls rapidly away from the moving car; after the engine passes the switchstand, the switch is opened, and the car, as it follows along, runs into the sidetrack.

Where cars are kicked into a side track, the engine pulls the car past the switch it is to enter, then backs towards the switch until it attains speed sufficient to carry the car into the side track; then the engine is uncoupled and stops; the car moves on until it comes to the switch, which, being opened, the car enters and is

thus kicked into the side track.   The former is certainly a running switch; that is, a car set in motion and shunted or side tracked, after the engine has been detached.

The rule that applies to one method of switching applies to the other, and the dangers, if any, must be the same in each case.   Just what the rule was, regulating the manner of making running switches, is not shown, nor does appellant state what kind of a rule there should have been regulating the "kicking" of cars into switches. Appellant says:   "If some rule had been enacted by defendant prohibiting such switches, except where absolutely necessary, the decedent would not have been run down and killed, for the making of a kick switch was not at all necessary on the occasion stated."   But how the mere enactment of a rule by the officers or directors of the company would have prevented the deceased from running in front of the cars on this occasion, or from having his foot caught, or how it would have hindered the cars from running him down, is not made clear.

The cases of *Hildebrand, Admr.*, v. *Toledo, etc., R. W. Co.*, 47 Ind. 399, and *Reagan* v. *St. Louis, etc., R. W. Co.*, 3 Am. St. Rep. 542, cited by counsel for the appellant to sustain this paragraph, are distinguishable from the case at bar, in this:   In neither of the cases referred to, did the injured party have any notice of the approach of the cars, and, therefore, was given no opportunity to escape.   In this case, the deceased had knowledge of the moving cars, and with that perception placed himself in front of them, and thereby assumed all the dangers incident to such exposure.

The fourth paragraph alleges that the deceased was a brakeman on a freight train, which arrived at Oxford; that the conductor in charge of the train ordered five cars in the train to be placed upon a side track, "with-

out giving special directions as to how said switching was to be done, and then went to the depot''; that the engine and five cars were uncoupled from the train and moved forward past the switch stand; the switch was turned; the engineer then carelessly and negligently backed his engine with great and unnecessary force so as to give said cars a speed of six miles per hour or more; said cars having been previously uncoupled from the engine, the speed of the engine was slackened, and the cars allowed to run said side track without an engine attached to them; that the conductor had ordered the decedent to couple these cars to some others standing on the side track; that to obey said order it became his duty and was necessary, after said cars had been given a ''kick,'' to arrange the link and pin of the first moving car so as to make the coupling promptly when the cars came together, before they had time to bounce apart; that in the performance of this duty, the decedent went in front of the moving cars and was engaged in arranging the link and pin; that being absorbed for a brief moment in doing this, and moving along with the cars, his foot caught in a frog, and the cars ran over and killed him.

The only act of negligence averred, that can be designated as the immediate cause of the accident, is the careless and negligent act of the engineer in backing or ''kicking'' the cars with unnecessary force or speed; but this negligence is so clearly the act of a fellow-servant, for which the appellee is not liable, that it was necessary to assert some other ground of liability on the part of the appellee. Hence it is alleged, as the gravamen of the action, that the engineer was not competent to discharge the duties of the service; that he was reckless, careless, in the habit of drinking liquors to excess, and was habitually disposed to inflict injury upon his coem-

ployes; that all these faults were known to the appellee, both before and after his employment, or might have been known by the exercise of care; that it carelessly and negligently employed him, and with like negligence continued him in the service, and that the deceased had no knowledge of the delinquencies of the engineer.

It will be observed that the conductor simply gave orders that certain cars should be separated from the train, switched on a side track and coupled to some other cars; that he gave no directions as to how this should be done, but after instructing the deceased to couple the cars, went to the depot and left the train crew, of which deceased was a member, to discharge the duty ordered to be performed. No blame is attributed to the conductor.

It is not charged that the engineer was intoxicated at the time, or under the influence of liquor, or that he was actuated by any malevolent motives toward the deceased. It is claimed he backed the cars at an excessive rate of speed, and that the deceased had no knowledge of the incompetency, recklessness or malevolence of the engineer. It must be true that if the engineer did send the cars back with undue force, the deceased must have known it. He was a brakeman in the service of his own volition. No claim is made that he was of immature years or inexperienced. It is to be presumed that he knew and understood his duties, and the danger of coupling cars in motion at an excessive rate of speed. He was on the ground, saw the cars pushed back, and saw the rate of speed they had attained. If it was a dangerous speed, he should have refrained from making the coupling. No one ordered him to go in front of the cars under such conditions. He chose to go, with full knowledge of the danger incident to the act, if he should stumble, slip, make a misstep or fall.

If, as asserted, this engineer was reckless and incompetent, and the deceased did not know it, he, on this occasion, had notice of the special act of negligence complained of before he was exposed to any danger. In such case he could not complain, if living; his representative can not do so now.

In support of this paragraph, appellant's counsel refers to the cases of *Pittsburgh, etc., R. W. Co.* v. *Ruby*, 38 Ind. 294, and *Lake Shore, etc., R. W. Co.* v. *Stupak*, 108 Ind. 1, neither of which is in point. In both of them the injured parties had no previous warning of approaching danger, and neither was afforded an opportunity to escape from the consequences thereof. One of them was a fireman on an engine that ran into an open switch, left open by the conductor of another train; the other was riding on a train, and was injured by the careless manner in which the engineer handled the train.

We are of the opinion that the court below did not err in sustaining the demurrer to the several paragraphs.

The judgment is affirmed.

