## THE WABASH RAILROAD .COMPANY *v.* RAY, ADMINISTATRIX.

[No. 17,432. Filed Nov. 15, 1898. Rehearing denied April 5, 1899.]

SPECIAL FINDING.—*Failure to Find Essential Fact in Favor of Party Having Burden of Proof.*—Where the party asking for judgment on a special verdict is not the one upon whom rests the burden of the issue, he is entitled to judgment in the absence of an essential fact which it was incumbent upon his adversary to establish. *pp. 393, 394.*

SPECIAL VERDICT.—*Only the Facts Found are to be Considered by the Court.*—The jury being required in their special verdict to find facts, mere conclusions, surmises, and evidence have no legitimate place therein, and are entitled to no consideration by the court. *p. 394.*

MASTER AND SERVANT.—*When Hazard Assumed by Servant.*—Where a danger or hazard of the business is alike open to the observation of all, the master and the servant, under such circumstances, are on an equality, and the former is not liable to the latter for an injury resulting from such danger. *p. 399.*

SAME.—*Assumption of Risk by Servant.*—An employe who has knowledge, or who by the exercise of ordinary diligence or observation can learn the imperfections of machinery or appliances with which he works, or the hazards of the premises where he performs the duties of his employment, and continues in the service without objection or promise of repairment, will be deemed to have assumed all the risks incident to such defects and hazards. *pp. 400, 401.*

SAME.—*Railroads.—Brakeman—Assumed Risk Incident to Unblocked Space at End of Guard-rail.*—Plaintiff's intestate, acting in the capacity of freight brakeman in the employment of defendant company, passed over defendant's line of railroad once a day, except Sunday, for a month prior to the accident which resulted in his death. During the period of such employment the defendant company maintained guard-rails at fifty of the crossings over such road. The open spaces at the ends of such guard-rails were all left unblocked. Plaintiff's intestate, who knew, or might have known by the exercise of ordinary care, that the spaces at the ends of the guard-rails were left unblocked, and while attempting to make a coupling caught his foot in one of the open spaces, and before he could extricate it he was run over by the cars and killed. *Held,* that plaintiff's intestate assumed the risk incident to the unblocked space at the end of the guard-rail. *pp. 394-405.*

From the Whitley Circuit Court.     *Reversed.*

*A. A. Adams* and *Stuart Bros. & Hammond,* for appellant.

*Ninde & Ninde,* for appellee.

JORDAN, J.—The appellant railroad company owned and operated as one of its branches a railroad extending from the city of Detroit, Michigan, through Columbia City, Indiana, to the city of Peru, in the latter State. Appellee is the administratrix of William O. Ray, deceased, who was at and prior to his death in the employ of appellant as a brakeman on one of its local freight trains. He was accidentally killed while coupling cars at Columbia City, by catching his foot in an unblocked guard-rail, and while in such condition was run over by the car which he was attempting to couple.

To recover for this alleged negligent killing, the appellee successfully prosecuted this action in the lower court, and, upon a special verdict by the jury, obtained a judgment for $5,000. The alleged errors of which appellant complains, in the main, are based upon the decision of the court in overruling a demurrer to the amended complaint, and in denying its motion for a judgment upon the special verdict of the jury, and in overruling its motion for a new trial.

We may, at least for the present, pass the consideration of the sufficiency of the complaint, for the reason that substantially the same facts, and the same theory thereunder, are disclosed by the special verdict, and if we can hold that, under the facts therein found, appellee is entitled to a judgment, such holding will certainly result in sustaining the complaint. Counsel for appellant earnestly insist that their motion for a judgment in favor of appellant, upon the special verdict, ought to have been sustained. Preliminary to the consideration of this insistence, we may properly refer to some familiar and well settled rules applicable to a special verdict, one of which is that it is the very essence of such a verdict that it state all the material facts within the issues of

the case, and no omission of a fact therein can be supplied by intendment. Its failure to find a fact in favor of the party upon whom the burden of establishing it rests is the equivalent of an express finding against him as to such fact. When the party having the *onus* in a case asks a judgment upon a special verdict, the material facts therein found, within the issues, must establish his right, under the law, to a judgment, otherwise he must fail in his demand; but where, as in this case, the moving party is not the one upon whom the burden of the issue rests, his right to be awarded a judgment does not depend alone upon the presence of material facts, but he may be entitled to the judgment by reason of the absence of some essential fact which it was incumbent upon his adversary to establish.

The jury, therefore, being required in their special verdict to find facts, mere conclusions, surmises, and evidence, have no legitimate place therein and are entitled to no consideration by the court. *Cook* v. *McNaughton*, 128 Ind. 410; *Cleveland, etc., R. Co.* v. *Miller, Adm.*, 149 Ind. 490.

It may be said that the verdict in this case is open to the objection that the jury, in several instances, stated their own conclusions and conjectures; eliminating these, however, as we must, the material facts embraced therein, and necessary to the solution of the question presented by counsel, may be summed up and stated as follows: Appellee's decedent was, at the time of his death, a skilful railroad brakeman, thirty years old, sound in body, and in good health. At the time of the fatal accident, he was in the employ of the appellant as a brakeman on one of its local freight trains, which ran over its road between the town of Butler and the city of Peru. His said employment as brakeman by appellant began on February 9, 1893, and he continued to serve as such brakeman on the train above mentioned until the time of his death, on March 14, 1893. During that period he ran on said train each day, except Sunday, over the road as follows: One day he would run from the town of Butler, through Columbia

City, to Peru, and the next day, he would return with his train over the same route from Peru to Butler.

The defendant for more than two months prior to March 14, 1893, maintained a certain spur-switch and side-track in Columbia City, which switch branched off from the main track of the railroad about fifty feet east of the point where said track crossed Main street, in Columbia City. This switch extended westward from its junction with the main track for a distance of 400 feet. The south rail of this switch was about seven feet and nine inches north of the north rail of the main track where it crossed Main street, and the main track of the switch crossed this street nearly at a right angle. Main street, in Columbia City, including its sidewalks, is eighty feet wide, and the east line of this street is fifty feet west of the junction of the main track of the railroad.

Two months and more prior to the death of the deceased, appellant placed and maintained two guard-rails, for a distance of forty-five feet, across said street. The east and west ends of these guard-rails were about the same distance from the east and west boundaries of this street. One of these guard-rails was placed and maintained two and three-eighths inches from the north rail of the switch, and the other the same distance from the south rail, and these guard-rails were so placed between the rails of the switch that each was bent, and flared out from the main rails of the track, until the ends thereof were about fourteen inches from the main rail of the switch. The opening of the east end of the south guard-rail is described in the special verdict as follows: "That the east end of said south guard-rail commenced to separate from the south rail of said track about nine feet from the end thereof, and continued to curve away from the south rail of said track till the east end thereof was seventeen inches from said south rail as aforesaid; that said curve in said guard-rail made a wedge-shaped space between the south rail of said switch and the bent portion of said guard-rail, which, at the point where said guard-rail commenced to recede from said south

rail, was two and three-eighths inches wide, and which space continued to widen as said guard-rail continued to leave the main rail until it was seventeen inches wide at the end of said guard-rail." The wedge-shaped space between these rails was unblocked, and the verdict states that for this reason it was "extra hazardous" for the decedent, and other employes of the defendant, to couple and uncouple cars moving westward over this open space, for the reason that they were liable, when so engaged, to step into said opening, and thereby cause one of their feet to become wedged and fastened therein so that it could not be withdrawn until such employe would be run over and killed by the car which he was coupling. The verdict states that this space, or opening, could have been prevented by blocking it as follows: "By a wooden block about sixteen inches long and two inches thick, cut in a wedge-shape so that the point would be two inches wide, and then widen as fast as said rail spread;" that such blocking would have prevented a brakeman's foot from passing under the rails, and becoming fastened.

It is further stated in the verdict that the defendant, long prior to the time it employed the deceased, had properly blocked all of its frogs, switches, and guard-rails at said switches, and that the deceased, during the time of his employment up to his death, "saw and knew" that said switches, frogs, and guard-rails were blocked, and safe to pass over. It is then stated that the defendant, carelessly and negligently, and without due caution and care for the safety of the deceased, in operating its train, and in coupling and uncoupling its cars over said switch and over said guard-rails at the crossing of said Main street, failed and neglected to block said space, or opening, between said guard-rails and said south rail, as above described; and that on said 14th day of March, 1893, the deceased was carefully, and in the due performance of his duty, engaged in coupling cars on said spur-switch on and over said open space between said guard-rail and the south rail of said track, and on and over the crossing of said

Main street.  As he was so carefully engaged in coupling cars, and moving westward between the cars, and over said space or opening, he stepped into said opening, whereby his left foot became wedged and fastened between said rails so that it became then and there impossible for him to withdraw his foot, and, while it was so held, the car that he was coupling, ran over him and then and there killed him, without any fault on his part.

The verdict then proceeds as follows: "That at the time he was so caught and run over and killed, he did not know, and never had known, that said space was not blocked or made safe for him to couple cars over the same, but from the fact that all the frogs, switches, and guard-rails at said switches, on and along the defendant's said road, were properly and safely blocked, the deceased believed, and had reason to believe, said space where his foot caught, and where and by means of which he was killed, was safely and properly blocked at the time he was killed, as aforesaid.    *    *    * That the defendant, all the time that the deceased was in its employ, knew that said space was not blocked, nor in any manner made and kept reasonably safe for the deceased and its other trainmen to switch and couple and uncouple cars over the same.    *    *    *    Yet the defendant, for and during all of said time, negligently and carelessly failed and refused to block the same or render it reasonably safe."

At the time of the accident the verdict states "that it was necessary for the decedent to give his entire attention to his duties in coupling cars, and that he did not see where he stepped, and did not know exactly where he was on said track at the time he was caught and killed."  It is then further stated as follows:  "That there were about forty-five guard-rails placed over the highway crossings on said railroad between Butler and Peru during the period that the said deceased was so employed by said defendant, and also about five street crossings at which such guard-rails were placed between the rails of said railroad or its side-tracks, and that the

purpose of placing said guard-rails at such crossings was to hold and contain gravel and other hard substances on a level with the tops of the rails at said crossings, and to avoid planking the same; that none of said guard-rails during said period were blocked, nor were said crossings, except in one other instance, a part of any system of switching upon said road."

We have in part stripped the special verdict of conclusions and immaterial matter, and the above facts may be said to be those which are essential to the question involved. The theory, upon which the verdict proceeds to impute negligence to the appellant, is founded on the omission of the latter to block the open space at the guard-rail. This rail, it appears, was forty-five feet in length, and located at or near a street crossing in Columbia City. The opening at the east end of the rail, where the accident occurred, began at a point where the guard-rail was two and three-eighths inches from the main rail, and continued to increase in width until at the end of the guard-rail it was seventeen inches wide. The duty, which it is claimed the appellant ought to have performed, was to have placed a wooden block or wedge in the opening, which block, as the jury find, should have been sixteen inches long and two inches thick.

It is seemingly contended by counsel for appellee that the failure to block this opening was negligence *per se*. It is held by some of the authorities that the operation of a railroad without blocking its frogs and switches, is not, as a matter of law, negligence. See *Missouri, etc., R. Co.* v. *Lewis,* 24 Neb. 848, 40 N. W. 401; *Hewitt* v. *Flint, etc., R. Co.,* 67 Mich. 61, 34 N. W. 659. The test of liability would seem to be, in such cases, not whether the railroad company had omitted to block its frogs and switches, as it might have done, but whether the places where its employes were required to work, were, on account of such omission, not reasonably safe for the performance of such work when such employes, under the particular circumstances in the case, were exercising ordinary care. But we may pass this feature of the case with-

out further comment, and proceed to consider the one so earnestly pressed and argued by counsel for appellant.

They contend that the facts disclose that the condition of the guard-rail was the same at and prior to the employment of the deceased, and so continued during his entire term of service until the time of the accident; that its dangerous condition, if such was the fact, was open and obvious to all, and clearly discernible by the deceased, had he, under the circumstances, exercised the sense of sight with which he must be presumed to have been endowed; therefore, it is insisted that the risk of the alleged hazard on account of the unblocked guard-rail, to which, as claimed by appellee, the deceased was subjected, was one of the risks he assumed, and thereby waived any right of recovery. We recognize the familiar doctrine, so often and so universally asserted, that the master, in the employment of his servants, impliedly obligates himself to exercise ordinary care to furnish them with a reasonably safe place to work, and also with reasonably safe machinery, appliances, and instrumentalities with which to perform their duties. The test or standard in such matters, upon the part of the master, is ordinary care, but, in order to ascertain what would constitute such care in the particular case, the dangers of the service in which the employe is engaged is a factor and must be considered. What might prove to be the exercise of ordinary care under some circumstances might not be such in others. Elliott on Railroads, section 1273.

The general rule relative to the risks which a servant assumes under his employment, to discharge hazardous duties is that he assumes such risks as are ordinarily incident to the discharge of the duties from causes open and obvious, the dangerous character of which he has had an opportunity to ascertain, but he does not assume the risks of unsafe premises, defective machinery, appliances or instrumentalities, unless he has had, or may, from the facts or circumstances, be presumed to have had, knowledge or notice thereof. *Griffin*

v. *Ohio, etc., R. Co.*, 124 Ind. 326; *Jenney, etc., Co.* v. *Murphy*, 115 Ind. 566; *Swanson* v. *City of Lafayette*, 134 Ind. 625; *Bedford Belt R. Co.* v. *Brown*, 142 Ind. 659; *Peerless Stone Co.* v. *Wray*, 143 Ind. 574; Elliott on Railroads, sections 1288, 1289.

The doctrine of the assumption of risks, upon the part of a servant, has been frequently applied by the higher courts in cases where the death or injury complained of was attributable to unblocked frogs, switches, or guardrails of railroad companies. In the following cases, decided by this court, the same question was involved as in the case at bar: *Lake Shore, etc., R. Co.* v. *McCormick*, 74 Ind. 440; *Ames, Adm.,* v. *Lake Shore, etc., R. Co.*, 135 Ind. 363; *Sheets, Adm.,* v. *Chicago, etc., R. Co.*, 139 Ind. 682. Among those of sister states in which the same question was presented, see *Spencer* v. *New York, etc., R. Co.*, 22 N. Y. Supp. 100; *McNeil* v. *New York, etc., R. Co.*, 24 N. Y. Supp. 616; *Appel* v. *Buffalo, etc., R. Co.*, 111 N. Y. 550, 19 N. E. 93; *McGinnis* v. *Canada, etc., Bridge Co.*, 49 Mich. 466, 13 N. W. 819; *Hewitt* v. *Flint, etc., R. Co.*, 67 Mich. 61; *Chicago, etc., R. Co.* v. *Lonergan*, 118 Ill. 41, 7 N. E. 55; *St. Louis, etc., R. Co.* v. *Davis*, 54 Ark. 389, 15 S. W. 895; *Holum* v. *Chicago, etc., R. Co.*, 80 Wis. 299, 50 N. W. 99; *Rush, Adm.,* v. *Missouri, etc., R. Co.*, 36 Kan. 129, 12 Pac. 582; *Richmond, etc., R. Co.* v. *Risdon's Adm.*, 87 Va. 335, 12 S. E. 786.

It is a well affirmed legal principle that where a danger or hazard of the business is alike open to the observation of all, the master and the servant, under such circumstances, are on an equality, and the former is not liable to the latter for an injury resulting from such danger incident to the business. *Swanson* v. *City of Lafayette*, 134 Ind. 625; *Big Creek Stone Co.* v. *Wolf, Adm.*, 138 Ind. 496.

It is also well settled that an employe who has knowledge or who, by the exercise of ordinary diligence or observation,

can learn of the infirmities, imperfections, or hazards of implements, machinery, or appliances with which he works, or the hazards of the premises where he performs the duties of his employment, and continues in the service without objections and without the promise of repairment or change upon the part of the master, will be deemed to have assumed all the risks incident to such defects and hazards, and thereby will be held to have waived his right to recovery for injuries resulting therefrom. While this rule cannot be extended so as to cast upon the employe the duty to search for latent defects in the machinery, appliances, and instruments used by him, or about which he works, or the hidden dangers of places where he is engaged in the line of his duty, yet it does go to the extent of holding that he assumes the consequences resulting from such defects and dangers as are apparent to him or such as, by the exercise of ordinary diligence and by giving proper heed to his surroundings, he might have discovered. *Rietman* v. *Stolte*, 120 Ind. 314; *O'Neal* v. *Chicago, etc., R. Co.*, 132 Ind. 110.

The facts in the case at bar, when tested in the light of the well settled principles to which we have referred, do not, in our opinion, entitle appellee to a recovery. The decedent, as the verdict discloses, was a man of mature years and well skilled as a railroad brakeman. His employment by appellant began on February 9, 1893, at which time and prior thereto, the guard-rail in controversy was in the same condition, and so continued up to the time of the fatal accident. He had served from the date of his employment, continuously as brakeman on one of appellant's local freight trains, until his death, which, as it is stated, occurred on March 14, 1893. Each day, except Sunday, during said period of his employment, the train on which he was braking and switching passed the place where the guard-rails in dispute were located. The main track and the side-track at that point were but seven and three-fourths feet apart. It is apparent,

therefore, that appellee's decedent, prior to the accident, passed about twenty-eight times very near to the open space occasioned by the unblocked guard-rail. At the time of the accident he was engaged in the line of his duty, as the jury find, in coupling cars over the opening in question. As to whether, at any time previous to his death, he had, or had not, engaged in switching and coupling cars at the point in controversy, the verdict does not expressly disclose. The unblocked opening, into which he stepped and caught his foot, was nine feet in length, two and three-eighths inches wide at one end, and seventeen inches wide at the other.

It is certainly manifest, from the facts, that this unblocked space or opening was so plain and obvious that it could have been seen by the deceased when so close to it as he was at divers times during the period of his employment, had he given ordinary heed to his surroundings.    It would surely seem that he would have been able to have discovered this obvious unblocked space at the time of the accident when he was engaged in switching and coupling cars immediately about and over the opening, had he exercised ordinary care or heed, as required, in regard to his surroundings.

The jury apparently offer an excuse for his failure to exercise such care, or heed, by concluding, as they do, that it was necessary at that time for him to give his entire attention to his duties, and therefore he "could not and did not see" where he was placing his foot. If not aware of the condition of the place about and over which he was moving his foot while coupling cars, common prudence, at least, ought to have admonished him to ascertain its character before placing his body, as he did, between the moving car and the one to which it was to be coupled.

The argument of counsel for appellee is that, as it appears, all of appellant's guard-rails at switches were blocked, and that deceased, at the time he was killed, and "always, up to the time of his death, saw and knew that said switches, frogs,

and guard-rails at said switches were properly blocked, and safe to pass over and couple and uncouple cars and make up trains over the same," therefore he had a right to believe that the guard-rails at the crossing of Main street in Columbia City, where the accident occurred, were in the same condition. This argument is not tenable, and is certainly without force when the facts found by the jury are considered, which reveal that appellant's guard-rails, some fifty in number, at other highways and street-crossings between Butler and Peru, were not blocked.

The fact that the decedent was so circumspect as to see, and know, at all times during his employment, that appellant's frogs, switches, and guard-rails at switches along the route over which he worked were properly blocked, and safe, makes it appear singular that such caution or heed upon his part did not also enable him to discover that the guard-rails at, or near, the crossing of Main street in Columbia City were not blocked. Considering the obvious character of these guard-rails, and the size of the opening of the south rail in which the foot of the deceased was caught, and the many opportunities which he had to ascertain that these rails were not blocked, it becomes apparent, we think, that, prior to the accident, he must have been aware of their condition, or by the exercise of ordinary diligence or observation he could have had knowledge that the opening in question was not blocked.

It certainly is evident, when all the facts are considered, that the opportunities of the deceased to know or learn the condition of these rails were virtually equal to those of appellant. In *Lake Shore, etc., R. Co.* v. *McCormick*, 74 Ind. 440, the employe caught his foot in an unblocked frog, and, while in that situation, was run over, and killed, by a car. It appeared in that case that the switches and frogs of the railroad company were in the same condition during the entire period of the service of the deceased. This court held that, under the circumstances, the condition of the frog, to which the death of the servant was imputed, was a risk incident to

the business which he assumed, and it was therefore held that the railroad company was not liable. In the case of *Ames* v. *Lake Shore, etc., R. Co.,* 135 Ind. 363, the employe was killed by catching his foot in an unblocked opening between. the abutting rails of a switch, and while in that condition was run over and killed by a moving train. It was held by this court that the question presented in that appeal was not one of contributory negligence, but one involving the assumption of the risk as incident to the service. It was there asserted that it was not only incumbent upon the plaintiff, in such cases, to show freedom from contributory negligence, but that it also devolved upon him to show, by facts, that the injury for which the recovery was sought was not the result of some hazard of the service assumed by those employed therein; and it was held, under the facts in that case, that the railroad company was not liable, for the reason that the deceased servant had assumed the risk incident to the use of the unblocked switch.

In the case of *Sheets* v. *Chicago, etc., R. Co.,* 139 Ind. 682, the servant was killed by catching his foot in an unblocked "switch angle," and while in that situation was run over, and killed, by a car which he was attempting to couple. It was alleged in the complaint that the deceased did not know, and had no means of knowing, that the angle or frog in question was not blocked; that at no time while in the service of the railroad company did he have the means or opportunity to inspect the angle or frog in question, and thereby discover the defect; that at the time of the accident, the ground was covered with snow so that it was impossible to discover the absence of the block. The complaint was held upon demurrer to be insufficient to entitle the plaintiff to a recovery, and, in the course of the opinion, Dailey, J., speaking for the court, said: "The duties of a brakeman include the handling of switches, and the coupling and switching of cars, and in the performance of these duties, he could readily learn if blocks had been provided to lessen the danger of the service.

Wabash R. Co. *v.* Ray, Adm.

The danger incident to an unblocked frog or switch is in no sense a latent one. On the contrary, it must be obvious to the most casual inspection. Any man of mature years must know that if he puts his foot into an acute angle formed by two converging lines of rail, there will be danger of his foot being caught or held thereby."

It was held, in that case, that the employe assumed the risk incident to the unblocked frogs and switches of the railroad company in whose service he was engaged as a brakeman at the time of the accident. The holding in that appeal, under the facts, which presented a stronger case in favor of the plaintiff than do those in the case at bar, is virtually decisive that there can be no recovery in this action.

The danger of the unblocked rail in this case, in the light of the facts, is certainly shown to have been open and obvious to all, and the deceased had many opportunities to see it; and, under a well settled doctrine heretofore mentioned, it must be presumed that he saw what he might have seen had he looked, and there can be no escape from the conclusion that, by his continuation in the service, he assumed the risk or hazard which resulted in his lamentable death.

For the reasons stated, the facts set out in the special verdict do not entitle appellee to a judgment against appellant. We have also considered the evidence and it may be said upon no view thereof can a recovery by the appellee be sustained. The judgment is reversed, and the cause remanded to the lower court, with instructions to sustain appellant's motion for judgment in its favor on the special verdict.